STATE of Minnesota, Respondent,

v.

Ronald William BACK, Appellant
(CX–83–554),

James Croft, Appellant (C9–83–1002).
Nos. CX–83–554, C9–83–1002.

Supreme Court of Minnesota.

Dec. 9, 1983.

C. Paul Jones, State Public Defender by Mark F. Anderson, Asst. State Public Defender, Minneapolis, for appellant Back.

Robert D. Goodell, Minneapolis, for appellant Croft.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas Johnson, Hennepin County Atty., and Vernon E. Bergstrom, Chief Appellate Div., for respondent.

AMDAHL, Chief Justice.

We have consolidated for purposes of decision the sentencing appeals of Ronald William Back and James Croft, both of whom were convicted in Hennepin County District Court of second-degree felony murder, Minn.Stat. § 609.19(2) (1982), for their roles in the shooting death of a Minneapolis woman early on July 17, 1982. We affirm.

The records on appeal indicate that, after an evening of drinking and smoking marijuana, defendants and a 14-year-old girl decided to "go out shooting." Back obtained a .44 caliber Magnum rifle and approximately 30 rounds of ammunition and then drove his car around Brooklyn Center and Brooklyn Park with Croft shooting at cars, street lights, and buildings. Apparently at the suggestion of the juvenile, who was in the middle of the front seat, they drove to the house of the victim. Croft fired 4 or 5 shots into the house. The victim was on the porch. She was killed by one of the bullets.

Both defendants had a criminal history score of zero. The presumptive sentence for the offense of second-degree felony-murder (which was a severity level X offense) by a person with defendants' criminal history score (zero) was an executed prison term of 116 (111–121) months.[1] The judge who presided at Back's trial denied Back's motion for a downward durational

---

1. The Sentencing Guidelines Commission, effective November 1, 1983, changed the severity level of second-degree felony-murder from X to IX, at the same time increasing the presumptive sentence for severity level IX offenses by a person with a criminal history score of zero from 97 (94–100) months to 105 (102–108) months. Minnesota Sentencing Guidelines and Commentary, IV (1983).

departure, sentencing him to the presumptive sentence of 116 months in prison. The judge who accepted Croft's guilty plea sentenced him to 150 months in prison, a limited upward durational departure.

1. Defendant Back contends that he should have been sentenced to only 97 months in prison, which is the presumptive sentence for third-degree depraved-mind murder, section 609.195. Mr. Back bases this in part on his belief that although he was technically guilty of felony-murder, his conduct more closely fit that covered by section 609.195, which deals with "[causing] the death of another [person] by perpetrating an act eminently dangerous to others and evincing a depraved mind, without regard for human life." Back also bases it on his lack of prior involvement in crime, his relatively passive role in the crime, and his remorse.

■ As a general rule, a defendant's remorse bears only on a decision whether or not to depart dispositionally, not on a decision to depart durationally or with respect to consecutive service. *See State v. McGee*, (Minn., filed September 16, 1983) (indicating that there may be cases in which a defendant's lack of remorse could relate back and be considered as evidence bearing on a determination of the cruelty or seriousness of the conduct on which the conviction was based); *State v. Schmit*, 329 N.W.2d 56, 58, n. 1 (Minn.1983) (indicating that the defendant's lack of remorse was not a factor justifying a durational departure or one with respect to consecutive service); *State v. Trog*, 323 N.W.2d 28 (Minn.1982) (indicating that a defendant's remorse and attitude in court are relevant factors in deciding whether to depart dispositionally). In this case, the trial court was not persuaded that Back's remorse was a significant factor that would justify a downward durational departure.

■ The fact that a defendant's role in the commission of a crime was "minor" or "passive" is a mitigating factor listed in Minnesota Sentencing Guidelines and Commentary, II.D.2.a. (1982). However, in this case the trial court was unwilling to characterize defendant's role in the commission of the crime as passive. As we indicated in *State v. Carson*, 320 N.W.2d 432, 438 (Minn.1982), "Whether or not the defendant played a passive role in the offense is the type of factual issue best decided at the trial court level in most cases."

■ Even if it could be said that defendant Back played a minor or passive role in the commission of the crime, the trial court was still under no obligation to depart durationally. We have indicated in a number of cases that ordinarily we will not interfere with a sentence that falls within the presumptive sentence range even if there are grounds that would justify departure. *See, e.g., State v. Abeyta*, 336 N.W.2d 264 (Minn.1983) (rejecting an argument that the trial court erred in refusing to depart dispositionally and place the defendant on probation). In *State v. Kindem*, 313 N.W.2d 6, 7 (Minn.1981), we stated:

Minn.Stat. § 244.11 (1980) permits the appeal in this case and we do not intend entirely to close the door on appeals from refusals to depart. However, we believe that it would be a rare case which would warrant reversal of the refusal to depart. As we stated in *State v. Garcia*, 302 N.W.2d 643, 647 (Minn.1981), the Guidelines state that when substantial and compelling circumstances are present, the judge "may" depart. This means that the trial court has broad discretion and that we generally will not interfere with the exercise of that discretion.

Other cases to the same effect include *State v. Brusven*, 327 N.W.2d 591 (Minn. 1982), and *State v. Kraft*, 326 N.W.2d 840 (Minn.1982).

■ We do not believe that the trial court erred in this case in refusing to depart. In this respect, we disagree with the contention that defendant's conduct was more consistent with depraved-mind murder than with felony-murder. Under the approach which we have taken, defendant's conduct very clearly constituted felony-murder. *See State v. Nunn*, 297 N.W.2d

752 (Minn.1980) (upholding use of felony-murder rule even if underlying felony is so-called property offense where the underlying felony, as committed, involved special danger to human life).

■ One other matter must be discussed in connection with defendant Back's appeal. Mr. Back points out that the Guidelines grid makes no distinction between second-degree intentional murder and second-degree felony murder, and he argues that this is wrong because one who commits intentional murder is more culpable than is someone who aids and abets another in committing an act of shooting at a house that results in death. We believe that whether or not felony-murder should be classified as second-degree murder or third-degree murder is a legislative decision.[2]

2. Defendant Croft contends that he should have been sentenced to the same presumptive sentence that defendant Back received. He argues that the grounds relied on by the trial court do not apply in this case. He also argues that it is unfair to give him a different sentence than that given to defendant Back.

The trial court justified the limited durational departure as follows:

The Court believes that while no one of those factors standing alone would justify an upward departure in sentencing in this case, that some of them taken together would constitute substantial and compelling reasons recognized by the sentencing guidelines as justifying an upward departure in this case. Those factors are, first, that the underlying felony in this case was one which did extend over a substantial period of time, a substantial geographic area, involved substantial victims. Not only was the immediate conduct of firing a rifle into the Peterson residence criminal damage to property which involved a high degree of

risk of bodily harm, but the other shootings over and above that necessary as a predicate to this felony murder conviction was similarly conduct involving a high risk of bodily harm.

The second factor is that the victim was in fact killed in the front porch of her own home, where of all places a person should feel secure from outside harm.

The third factor which the Court believes justifies an upward departure is the random nature of the crime. I disagree with defense counsel that random means unintentional. Random means without selection. This victim was one with no connection whatsoever with the defendant, and that is in this Court's judgment a factor which the Court can take into account together with the other factors which I have mentioned in concluding that [they are] indeed substantial and compelling reasons which would justify upward departure in this case.

■ The general issue that faces a trial court in deciding whether to depart durationally is whether the defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime in question. In making this determination the court may not consider evidence that points to the defendant's guilt of some other offense but that does not support the conclusion that the defendant committed, in a particularly serious way, the offense with which he is being sentenced. On the other hand, generally it is proper for the sentencing court to consider the course of conduct underlying the charge for which the defendant is being sentenced.

■ If there is such a thing as a typical felony-murder, it probably is an unintentional killing that occurs in the course of

**2.** As we indicated earlier, in footnote 1, the Guidelines Commission has reclassified felony-murder as a severity level IX offense, which has the effect of changing the presumptive sentences for felony-murder so that they are equivalent to those for third-degree depraved-mind murder. The commission, on the other hand,

slightly increased the presumptive sentences for offenders with a criminal history score of zero who commit severity level IX and X offenses. Whether defendant will benefit from any retroactive application of the changes is not an issue in this appeal.

robbery or some other crime against the person. However, as we made clear in *State v. Nunn*, 297 N.W.2d 752 (Minn. 1980), the felony-murder rule can be used even when the underlying felony is a property offense if that offense, as committed, involves special danger to human life.

One of defendant Croft's arguments on appeal is that the trial court, in looking at the underlying conduct as one factor in the analysis, was in effect relying on conduct that was already used to justify convicting defendant of felony-murder—specifically, the fact that the risk of death was foreseeable and the fact that defendant committed a property offense in such a way as to present special dangers to human life. Defendant argues that the randomness of the crime should be a factor in a felony-murder case only if the underlying felony is a crime against a person. He argues also that the fact that the victim was shot at home should not be a factor because firing the shots at a house was what made defendant's conduct constitute murder. He also argues that the use of this fact makes sense only in a case where the victim was not killed.

It is true that the underlying felony was a property offense and that it was the foreseeability of death and the dangerous manner in which defendant committed the property offense that justified using the underlying felony as a predicate for a felony-murder conviction. However, everything is a matter of degree. Defendant did not shoot at just one house. Rather, he went on a shooting spree that lasted a significant period of time and involved firing approximately 30 shots with a high-powered rifle at a number of buildings, including a school and two houses (three bullets apparently entered the interior of a different house). *See State v. Luna*, 320 N.W.2d 87 (Minn.1982) (qualitative assessment of facts justified conclusion that defendant's conduct was sufficiently different in degree to justify departure); *State v. McClay*, 310 N.W.2d 683 (Minn.1981) (robbery was more aggravated form of armed robbery because defendant put a large number of people in fear, kidnapped one person, and assaulted several others during escape). Contrary to what defendant argues, the fact that he shot at a house is not what made his conduct felony-murder. If he had killed someone while shooting at a street sign his conduct still would have been felony-murder. Under the circumstances, we see no problem with relying on the fact that defendant invaded the victim's curtilage as an aggravating factor. Shooting at a dwelling house is something which most of us look upon as being more serious than shooting at a warehouse, just as burglary of a dwelling house is more serious. Since invasion of the curtilage was not an element of the offense, we believe that it was proper to rely on this factor. The randomness of the killing, which is somewhat related, is something that also properly bore on the trial court's determination of whether defendant's conduct was more serious than that typical of most felony-murder cases. The victim was a totally innocent person who was in a place where she had every right to expect she was safe. *See State v. Norton*, 328 N.W.2d 142 (Minn.1982) (random kidnapping of young girl from her own yard). For the reasons relied upon by the trial court, we believe that it can be said that defendant committed the offense of felony-murder in a particularly serious way.

Defendant Croft argues, however, that even if this is so, his sentence still should be reduced to 116 months because his conduct really was no more serious than that of his accomplice, Back. This issue is answered by our decision in *State v. Vasquez*, 330 N.W.2d 110 (Minn.1983). Notwithstanding *Vasquez*, we have discretion, if we choose to use it, to reduce a defendant's sentence in order to make it more equitable with the sentence that a similarly situated codefendant received. One fact which we believe clearly justified the harsher sentence in this case is that it was defendant Croft who actually fired the gun. In other words, Croft had the choice

to shoot in such a way that no one would have been killed or not to shoot at all.

Affirmed.