STATE of Minnesota, Respondent,

v.

Gordon Melvin Gale BROTEN, Jr., Appellant.

No. C1–83–1057.

Supreme Court of Minnesota.

Jan. 27, 1984.

Bruce H. Hanley, Hanley, Hergott & Hunziker, Minneapolis, Douglas Peine, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Gerald Anderson, Sp. Asst. Atty. Gen., St. Paul, for respondent.

AMDAHL, Chief Justice.

This is a sentencing appeal in which the defendant contends that the trial court erred in computing defendant's criminal history score and in departing durationally from the presumptive sentence. We affirm this sentence.

Recently, in *State v. Broten*, 341 N.W.2d 279 (Minn.1983), we affirmed defendant's conviction of the 1980 burglary of a Roseau store. This appeal concerns defendant's sentence for conduct occurring early on January 21, 1983, while defendant was on probation in connection with the earlier conviction. Defendant, who is now 39, attended a party on the night in question. At this party he bragged about his ability to break into nearly any building in town and said that "It would be funny to see the town burn down." He left the party between 1:30 and 2 a.m. and went to the residence of a woman he knew. The residence is near the business district. Defendant left that place at 3 a.m. and began the course of conduct that lead to this proceeding.

Defendant broke into five buildings in the business district, all of which are located within a block of each other. The structures that the defendant entered were the law offices of the county attorney, the Ro-

seau *Times Region* newspaper building, a restaurant, a shoe store, and an insurance agency. Defendant set fires in the law office and in the newspaper building. The fire in the law offices was discovered at 4:20 a.m. It resulted in extensive damage to the building and to the building's contents. Minutes later the fire in the newspaper building was discovered. This fire resulted in the total loss of the building and the destruction of the newspaper's files and records. This fire also resulted in extensive damage to the adjacent building, which housed the restaurant.

Defendant was charged by complaint with eight counts: I., arson in the second degree (damage in excess of $2,500) for the fire at the law offices; II., arson in the second degree for the fire at the newspaper building; III., arson in the second degree for the fire at the restaurant; IV., burglary for breaking into the law offices; V., burglary for breaking into the newspaper building; VI., burglary for breaking into the restaurant; VII., burglary for breaking into the shoe store; VIII., aggravated criminal damage to property in excess of $300 for damage to the restaurant, the shoe store, and insurance agency and the law offices.

Defendant's attorney subsequently negotiated an agreement with the prosecutor whereby defendant was permitted to plead guilty to counts I, II, IV, and V—the arson and burglary counts relating to the law offices and the newspaper building—in exchange for the dismissal of the other counts. In entering his pleas defendant stated that he committed the offenses against the attorney and the newspaper out of revenge. Defendant claimed that he was intoxicated at the time he committed the crimes and that his memory of what he did and why was bad.

The trial court computed defendant's criminal history score as being four, using the *Hernandez* method. The burglary offenses are severity level IV offenses and the arson offenses are severity level VI offenses. Use of the criminal history score of four gave defendant a presumptive sentence of 44 (42–46) months for one of the

two arson convictions. The trial court sentenced defendant to 66-month terms for the two arson counts, with the terms running concurrently with each other and with the time left on defendant's prior sentence, for which probation was revoked. The court stayed imposition of sentence on the burglary counts. The court gave a number of reasons for departing durationally, specifically, the substantial economic loss to the attorney and the newspaper owner, the fact that the newspaper records destroyed were irreplaceable, the fact that the newspaper fire spread and damaged the cafe, and the court's view that the arson offenses were crimes of violence, not just crimes against property. The court also indicated that defendant was not amenable to probation.

The state concedes in its brief that the maximum criminal history score that could be obtained using the *Hernandez* method in this case was three for the second arson offense sentence (one for defendant's probationary status, one for defendant's prior burglary conviction, and one for the first arson offense sentence). Minnesota Sentencing Guidelines and Commentary, II.B (1982). Use of a criminal history score of three to determine the presumptive sentence for this offense, a severity level VI offense, results in a presumptive sentence of 34 (33–35) months rather than 44 (42–46) months.

Defendant contends that the grounds that the trial court relied on for the departure failed to justify the departure. He argues that the offense was not a so-called major economic offense because he did not commit the offense for his own gain. He argues, further, that the amount of damage was already taken into account in figuring the degrees of the offense. He argues that arson by definition is a crime of violence against property and therefore the court could not rely on that fact as a ground for departure. He argues that unamenability to probation is a factor only in a dispositional departure, not a durational departure. He argues that the fact that the property was irreplaceable does not distin-

guish this case from the usual case, since fire by definition destroys both replaceable and irreplaceable property. He argues that it was improper to rely on the destruction of the restaurant as a ground for a durational departure because defendant was not convicted of that offense.

The general issue that faces a sentencing court in deciding whether to depart durationally is whether the defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime in question. In making this determination the court may not consider evidence that points to the defendant's guilt of some other offense but that does not support the conclusion that the defendant committed the offense in question in a particularly serious way. On the other hand, generally it is proper for the sentencing court to consider the course of conduct underlying the charge for which the defendant is being sentenced. *E.g.*, *State v. Gross*, 332 N.W.2d 167, 170 (Minn. 1983); *State v. Running*, 330 N.W.2d 119, 120–21 (Minn.1983); *State v. Norton*, 328 N.W.2d 142, 146 (Minn.1982); *State v. Brigger*, 316 N.W.2d 512, 513 (Minn.1982); *State v. Rott*, 313 N.W.2d 574, 575 (Minn. 1981); *State v. Garcia*, 302 N.W.2d 643, 647 (Minn.1981).

Applying the foregoing principles, we conclude that the underlying conduct in this case was more serious than the conduct underlying a typical arson conviction. Defendant's conduct, which was motivated by revenge, caused damage directly to the owners of the property and indirectly to many more people. *See State v. Profit*, 323 N.W.2d 34, 36–37 (Minn.1982) (robbery was more serious than typical robbery because defendant committed the robbery in the presence of young children); *State v. McClay*, 310 N.W.2d 683, 685 (Minn.1981) (robbery was more serious than typical robbery because the defendants put more people in fear, kidnapped one person and assaulted several others during their escape).

The lawyer, the publishers of the newspaper and the restaurant owners were all directly affected.[1] Beyond this, the clients of the lawyer, the patrons of the restaurant, and the readers of the newspaper (the publication of which was disrupted) all were affected.

The state suggests that we use the same multiplier (1½) that the trial court did and reduce defendant's sentence to 51 months (34 × 1½). In some cases this might be appropriate but not in this case. Our examination of the record convinces us that the trial court wanted to impose a sentence of 66 months. Since that sentence was within the permissible range of departure from the presumptive sentence for the offense in question, we affirm the sentence imposed.

Affirmed.

---

1. We are not certain that the trial court was correct in stating that the files of the old newspaper were irreplaceable. The State Historical Society makes microfilm copies of all newspapers published in the state and these files, in many cases, are complete.