**STATE of Minnesota, Respondent,**

v.

**Marjori C. HAGEN, Appellant.**

**No. CX–84–340.**

Court of Appeals of Minnesota.

Jan. 22, 1985.

Review Denied April 18, 1985.

pin County Atty., Paul R. Jennings, Asst. County Atty., Minneapolis, for respondent.

Ronald I. Meshbesher, Cheryl Divine, Minneapolis, for appellant.

Heard, considered, and decided by FORS-BERG, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

SEDGWICK, Judge.

Defendant Marjorie Caldwell Hagen appeals her convictions for second degree arson and insurance fraud. She also appeals the trial court's upward departure from the sentencing guidelines. We affirm.

## FACTS

This case took six weeks to try. Two of those weeks involved the presentation of *Spreigl* evidence. The essential facts are as follows.

Appellant Marjorie C. Hagen and her husband owned a house, known as the Cranberry House, which is the subject of this arson case. The Hagens sold the house three months before a large balloon payment on a contract for deed on the Cranberry House fell due. Hagens sold the house to Clayton and Gerane Kulseth on the condition that they insure the house to its full value from the date of closing with the Hagens listed as the insureds in case of loss before Kulseth's possession. The Hagens also requested a two week hold over period after closing.

During these two weeks the Hagens had keys to the house. The night before the Kulseths were to take possession the Hagens supposedly gave the Kulseths all the house keys. The next morning a fire completely gutted the interior of the house. Hagen was at the scene of the fire. When a neighbor said "your house is burning," she casually replied, "it isn't our house anymore, we sold it, we moved out two weeks ago."

Within weeks of the fire, Hagen called the insurance company and informed them

Hubert H. Humphrey, III, State Atty. Gen., St. Paul, Thomas L. Johnson, Henne-

she was entitled to the proceeds. After four months elapsed without an arrest, the insurance company paid the Hagens $16,615.

Eventually investigators concluded that accelerants were used to fuel the fire. Pursuant to a search warrant, police officers seized a key found in Hagen's kitchen cupboard. This key opened the front door of Cranberry House and fit the back door but would not open it. During this search, Hagen denied her presence at the scene of the fire and made several statements regarding her whereabouts at the time of the fire which were inconsistent with other witnesses' testimony.

## ISSUES

1. Was the evidence sufficient to support defendant's convictions for second degree arson and insurance fraud.

2. Was *Spreigl* evidence of two previous fires properly admitted?

3. Were defendant's statements to police voluntary?

4. Was defendant entitled to a new trial based on a claim of newly discovered evidence?

5. Were results of search warrants at defendant's house properly admitted?

6. Did the trial court's ruling regarding defendant's financial records deny defendant a fair trial?

7. Did the trial court err in refusing to grant a new trial based on an unsolicited comment by a witness?

8. Was defendant improperly charged with second degree arson where the complaint did not allege a monetary loss?

9. Was the trial court justified in departing both dispositionally and durationally in sentencing?

## ANALYSIS

■ 1. Defendant argues the evidence is legally insufficient to sustain her convictions. Viewing the evidence in a light most favorable to the verdict, as we must, *State v. Mattson,* 356 N.W.2d 391

(Minn.Ct.App.1984); *State v. Merrill,* 274 N.W.2d 99 (Minn.1978), there is no merit to defendant's argument.

2. Defendant challenges the trial court's decision to allow the jury to hear evidence regarding two previous fires involving property defendant planned to purchase.

■ Generally evidence of prior misconduct is inadmissible. However, prior misconduct is admissible if it tends to establish motive, intent, the identity of the accused, and/or a common scheme or plan embracing the commission of similar crimes so related to each other that proof of one or more of such tends to establish the accusation. *State v. Clark,* 296 N.W.2d 359, 368, (Minn.1980) quoting *State v. Sweeney,* 180 Minn. 450, 455, 231 N.W. 225, 227 (1930).

■ In determining whether to admit this type of evidence, also known as *Spreigl* evidence, a court must consider:

whether the evidence is clear and convincing that defendant participated in the *Spreigl* offense, whether the *Spreigl* evidence is relevant and material to the state's case, and whether the potential of the *Spreigl* evidence for unfair prejudice substantially outweighs its probative value.

*State v. Morrison,* 310 N.W.2d 135, 137 (Minn.1981); *see also State v. Billstrom,* 276 Minn. 174, 149 N.W.2d 281 (1967).

The two previous fires and the fire in this case had many similarities. All of the fires involved the use of an accelerant. Each occurred in a vacant building late at night or in the early morning when witnesses were not likely to be present. Defendant or her car was seen at the scene of all three fires. All three fires occurred shortly before real estate payment deadlines defendant was financially unable to meet. After each incident, defendant told falsehoods concerning her whereabouts at the time of the fire or to justify suspicious conduct before the fire.

More specifically, regarding the fire at the Woodland property, defendant asked

for a lower selling price on the property after she just happened to discover the place flooded on the day her downpayment was due. A water faucet had been left on. As a result, defendant demanded her downpayment deadline be extended another week, and a supplement to the purchase agreement be drafted providing for a price allowance for the damage to the property.

A week later defendant still had not tendered the earnest money due. She claimed the check was in the mail. Just one day before closing, a fire completely destroyed the house. Defendant immediately signed papers cancelling the purchase agreement, thereby eliminating her obligation to make the downpayment. The day of the fire, defendant just happened to be at the property again. She told police a story regarding her whereabouts at the time of the fire which was uncorroborated and contradictory to other witnesses' testimony.

Defendant's involvement in the 1982 Togo Road fire is less obvious than her involvement in the 1979 Woodland fire. The evidence shows that the 1982 fire occurred two days before defendant was scheduled to close on the property. This closing had been postponed three previous times because she did not have the money to pay the downpayment. After the fire, defendant cancelled the purchase agreement only after attempting unsuccessfully to negotiate a lower purchase price.

A Togo Road neighbor testified that he saw a small blue or grey foreign car at the burned property about a half hour before the fire department received the fire call. At that time defendant was driving a car of that description.

In *State v. Jacobson,* 326 N.W.2d 663 (Minn.1982), the court held that in the prosecution for second-degree arson, evidence that the fire had been intentionally set and of defendant's possible motive was sufficient to sustain a conviction. Here, we have evidence that the Togo Road and Woodland fires were intentionally set and that defendant had a financial motive for wanting the property burned.

If financial motive and an intentionally set fire are sufficient to sustain a conviction, then proof of these two elements is clear and convincing under *Spreigl.* Since the *modus operandi* of the previous fires shed light on defendant's motive in setting the present fire, the trial court did not abuse its discretion in admitting the evidence. The trial court correctly found that the probative value of the *Spreigl* cases outweighed the prejudice of admitting them.

3. Defendant claims her statements made to police at her home should not have been admitted at trial because she was not informed of her *Miranda* rights before questioning.

The test in determining the need for *Miranda* warnings is not whether the interrogation has coercive aspects to it or whether the investigation has focused on the person being questioned, but whether the person being questioned is in custody or deprived of his freedom of action in any significant way.

*State v. Sickels,* 275 N.W.2d 809, 813 (Minn.1979) citing *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).

The record does not support defendant's claim of custodial interrogation requiring a *Miranda* warning. Police went to defendant's home to execute a search warrant. Although the search warrant included the defendant's person, they did not search her and their actions showed no intention to do so. The police allowed defendant to move freely within her home while they searched, restricting her to the living room only when she interfered with execution of the warrant. Under these circumstances, the trial court properly admitted defendant's statements to the officers into evidence.

4. Not until a month after trial did defendant have a locksmith test the locking device on the back door of the burned house. State's witnesses testified that the key found in Hagen's house after the fire unlocked the front door of Cranberry House and fit the back door but would not

open it. Defendant's locksmith confirmed that the key would not open the back door and asked that the front door lock be made available for testing. That door was somehow lost by the Mound Fire Department. On the basis of this "newly discovered evidence" defendant moved for acquittal or a new trial. The trial court properly denied the motion.

■ The test for granting a new trial on the grounds of newly discovered evidence is twofold:

1. It must be shown that the evidence could not have been discovered before trial by due diligence and that the newly discovered evidence at the time of trial was not within the knowledge of the accused or is not merely cummulative.

2. It must be shown that, in the event of a new trial, the newly discovered evidence will probably produce a different or more favorable result.

*State v. Jacobson,* 326 N.W.2d 663, 666 (Minn.1982) (quoting *State v. Klotter,* 274 Minn. 58, 64, 142 N.W.2d 568, 572 (1966)).

Defendant failed to meet either requirement. First, nothing prevented defendant's locksmith from examining the doors before trial.

■ Second, defendant failed to demonstrate that the locksmith's testimony would have produced a different or more favorable result. The key was only one of many facts which pointed to defendant's guilt. Absent a showing of abuse of discretion appellate courts will not reverse a trial judge's decision to deny a motion for new trial. *Martin v. State,* 295 N.W.2d 76 (Minn.1980).

5. Defendant claims the trial court erred in admitting financial and bank records taken during the searches of her home because the authorizing search warrants were overly broad.

The search warrant provided for seizure of:

All business and financial records for Wallace and Marjorie Hagen, also known as Marjorie Leroy, Marjorie Bannister, Marjorie Caldwell, and Marjorie Cong-

don; including but not limited to purchase agreements, work papers, financial statements, correspondence, insurance records, canceled checks, loan agreements, promissory notes or any other real estate documentation as they relate to 5850 Lynwood Boulevard, Mound, Minnesota. Any and all accelerants containing combustible flammable aromatic hydrocarbons, including gasoline; plus any and all keys for the locks at 5850 Lynwood Boulevard, Mound, Minnesota.

at the premises described as:

The residence of Wallace and Marjorie Hagen located at 5222 Phelps Road, Mound, Minnesota, and the persons of Wallace and Marjorie Hagen.

■ In determining the scope of a search warrant a court must look to the common sense and realistic meaning of supporting affidavits. The affidavits must contain information which would warrant a person of reasonable caution to believe that the articles sought are located at the place to be searched. *Rosillo v. State,* 278 N.W.2d 747 (Minn.1979); *Hanson v. State,* 344 N.W.2d 420 (Minn.Ct.App.1984); *State v. Pierce,* 358 N.W.2d 672 (Minn.1984).

■ The supporting affidavit of the officer requesting the search warrant adequately revealed probable cause for the issuance of the warrants. In addition, the warrant is sufficiently specific to meet this standard.

6. Defendant asserts she was denied a fair trial because the trial court allowed evidence of defendant's unpaid bills. The state attempted to show Hagen's poor financial condition by introducing an exhibit which included mostly unpaid or delinquent bills seized during a search of defendant's house pursuant to warrant. The court initially allowed testimony to establish foundation before determining admissibility. Defense counsel objected arguing such testimony allowed the jury to speculate on defendant's financial condition without sufficient facts.

■ However, this exhibit was later re-offered and accepted into evidence *without objection* by defense counsel. Therefore, appellant is not entitled to new trial on this issue because of her failure to object. *State v. Beard*, 288 N.W.2d 717, 718 (Minn. 1980).

7. Defendant asserts she was denied a fair trial when the trial court denied a mistrial motion after a Bureau of Criminal Apprehension (BCA) officer testified that certain witnesses were excluded as suspects because they had no arson in their history, implying defendant did have arson in her history. The trial judge ordered the response stricken from the record and instructed the jury to disregard it.

Defendant cites *State v. Martin*, 256 N.W.2d 85 (Minn.1977), to support her position that denial of the motion for mistrial was reversible error. In *Martin* the defendant, charged with assault, was improperly questioned by the prosecutor regarding remote drug use by his friends. His conviction was reversed because the court determined that the prosecutor's line of questioning "was a calculated attempt * * to impeach the character of the accused." *Id.* at 86.

■ Defendant claims the prosecutor intentionally tainted the trial by asking the question which elicited the objectionable response. However, the transcript reveals that the answer was an unintended and unexpected explanatory answer to a question calling for a yes or no response. *State v. Johnson*, 291 Minn. 407, 192 N.W.2d 87 (1971).

■ Therefore, *State v. Barness*, 294 Minn. 507, 200 N.W.2d 300 (1972) and *State v. Richmond*, 298 Minn. 561, 214 N.W.2d 694 (1974) apply. These cases recognize that unintended responses under unplanned circumstances ordinarily do not require a new trial.

8. Defendant claims she was improperly charged with second degree arson because the complaint did not allege a monetary loss. This claim is without merit for two reasons. First, Minn.R.Crim.P. 11.04 provides,

> the court *shall* ascertain any constitutional, evidentiary, procedural or other issues that may be heard or disposed of *before trial* and such other matters as will promote a fair and expeditious trial, and *shall* hear and determine them, or continue the hearing for that purpose.

(emphasis added).

■ Since appellant did not make a motion to amend the complaint before trial, she has waived her right to do so now.

Second, Minn.R.Crim.P. 17.06, subd. 1, provides:

> No indictment, complaint or tab charge shall be dismissed nor shall the trial, judgment or other proceeding thereon be affected by reason of a defect or imperfection in matters of form which does not tend to prejudice the substantial rights of the defendant.

■ Here, there is no showing of prejudice to defendant. Before trial defendant clearly knew the seriousness of the charges against her and no substitute complaint was requested. During trial the value of Cranberry House was referred to several times. The trial court instructed the jury that it must find a monetary loss in excess of $2,500 to return a guilty verdict. Under these circumstances the form of the complaint did not prejudice substantial rights of defendant. *See State v. Hatlestad*, 347 N.W.2d 843 (Minn.Ct.App.1984).

Furthermore, *State v. Alexander*, 290 Minn. 5, 185 N.W.2d 887 (Minn.1971), held that where defects in a complaint are raised for the first time on appeal, the complaint will be interpreted so as to uphold its validity whenever this is reasonably possible. *Id.*, 290 Minn. at 9, 185 N.W.2d at 890.

9. Lastly, defendant claims the trial judge was not justified in departing both dispositionally and durationally in sentencing her. The trial judge sentenced defendant to 31 months in prison and fined her $10,000. The presumptive sentence is 21 months stayed.

**414**

Defendant claims the dispositional departure is inappropriate because the trial judge did not find defendant was dangerous to society or unamenable to probation. However, in *State v. Gartland*, 330 N.W.2d 881 (Minn.1983), the supreme court upheld the trial court's dispositional departure because the defendant's conduct was more serious than that usually associated with the offense in question. The court specifically noted that the trial court did not rely on the defendant's particular unamenability to probation.

 Here, the arson was more serious than that usually associated with arson in the second degree. An arson significantly more serious than a typical arson also justifies a durational departure. *State v. Broten*, 343 N.W.2d 38 (Minn.1984).

In *Broten*, defendant was convicted of second degree arson and the trial court departed durationally from the presumptive sentence. The supreme court upheld the departure noting that the arson was not typical. It was motivated by revenge, and caused damage directly to the owners and indirectly to others.

Here, the trial court found that defendant was motivated by economic gain and caused significant damage to others. The insurance company lost more than $70,000, and the new buyers lost a house which had historical value. Additionally, defendant used a scheme of contractual agreements to benefit from the fire. It was not an overnight decision to torch a house and get insurance money. It was a long term plan to conceal arrangements and benefit from complicated dealings.

This court upheld a durational and dispositional departure in *State v. Hamer* on the grounds that the offense involved a loss far greater than the statutory minimum loss and that the offense took planning. 341 N.W.2d 578 (Minn.Ct.App.1983). In *Hamer* the theft by swindle involved more than $36,000, compared to the statutory minimum of $2,500.

In *State v. Wittig*, 343 N.W.2d 711 (Minn.Ct.App.1984), a durational departure was upheld because the court found the great monetary loss justified the sentence. The theft by swindle in *Wittig* involved more than $55,000, where the minimum statutory loss is $2,500.

 Here, the loss from the arson involved more than $70,000, compared to the statutory minimum of $2,500. The departure is justified.

### DECISION

We affirm the trial court in all respects.