**STATE of Minnesota, Respondent,**

v.

**Wendell LEWIS, Appellant.**

**No. C6–85–1687.**

Court of Appeals of Minnesota.

April 15, 1986.

Review Denied May 29, 1986.

## OPINION

HUSPENI, Judge.

Appellant Wendell Lewis appeals from his convictions of first and second degree arson in violation of Minn.Stat. §§ 609.561, subd. 1, 609.562 (1984). Lewis was sentenced to concurrent terms of forty-eight months and thirty months for the two convictions. On appeal, Lewis challenges (1) the admission of *Spreigl* evidence; (2) the trial court's refusal to vacate his second degree arson conviction; and (3) the trial court's durational sentencing departure. We affirm in part, vacate in part and remand.

## FACTS

Lewis' convictions arise out of a fire that occurred on January 6, 1985, in an apartment leased by Karen Boeck in a St. Paul 102-unit apartment building.

Boeck lived alone in the apartment except for a short time when Lewis lived with her beginning in October 1984. Prior to the fire, Boeck had known Lewis for approximately two years. They had a sporadic dating relationship. Sometime in October 1984, Boeck obtained a restraining order against Lewis. The couple subsequently reconciled but on December 31, 1984, Boeck obtained another restraining order against Lewis.

When the second restraining order was issued, Lewis still had some of his personal belongings at Boeck's apartment. During the following week, Lewis called Boeck several times and angrily demanded that she return his belongings. Boeck testified that when she was visiting a friend at an apartment in the same complex sometime before the fire, Lewis came there and told her that "if he didn't get his belongings back in 24 hours that he was going to come back the next day and that he would blow my car up." During the morning of January 6, 1985, Lewis called Boeck several times asking her if he could come over and get his belongings. Boeck would not let

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey Co. Atty., Steven C. DeCoster, Asst. Co. Atty., St. Paul, for respondent.

C. Paul Jones, Public Defender, Susan K. Maki, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by WOZNIAK, P.J., and LANSING and HUSPENI, JJ., with oral argument waived.

him because she was afraid he would be violent. Boeck testified that Lewis was irrational and angry, and "he said that he would make sure that he made life miserable for me and that I would lose everything."

At about 12:15 p.m. on January 6, Boeck left her apartment to drive a friend to the airport. She locked her apartment when she left. Soon afterwards a ten-year-old boy saw Lewis going towards Boeck's apartment and heard him banging on her door.

At approximately 12:52 p.m., a fire in Boeck's apartment was reported to the fire department. No one was physically injured in the fire, but Boeck's cat died. All of Boeck's personal property was destroyed and the damage to the apartment building amounted to $23,500.

Lewis did not testify at trial. A St. Paul police investigator testified that Lewis told him that he (Lewis) did go over to Boeck's apartment on January 6, but he did not enter Boeck's apartment because she was not home. Darlene Swandby, the person Lewis was living with at the time of the fire, testified that she drove Lewis to Boeck's apartment on January 6 and arrived there between 12:15 and 12:30. Swandby waited in the car while Lewis went into the apartment building carrying what she thought was an empty flight bag. She testified that he was gone for about fifteen minutes.

Both a St. Paul Fire Department arson investigator and a private insurance investigator opined that the fire was started with an accelerant in the corner of a closet.

## ISSUES

1. Did the trial court abuse its discretion in admitting evidence of three *Spreigl* incidents?

2. Did the trial court err in refusing to vacate Lewis' conviction of second degree arson?

3. Did the trial court abuse its discretion in departing durationally when sentencing Lewis for his conviction of first degree arson?

## ANALYSIS

### I.

Lewis first argues that the trial court erred in admitting evidence of three other arsons or attempted arsons that Lewis allegedly committed. We disagree.

The first of these alleged arsons occurred on October 13, 1975. At trial, two of the police officers who investigated this incident testified that Lewis admitted setting fire to a car belonging to a former girlfriend, because he was angry at the girlfriend for failing to return some of his personal belongings after their relationship had ended. As a result of this incident, Lewis pleaded guilty to and was convicted of simple arson.

The second arson incident occurred approximately three years later on August 5, 1978. Lewis was with another former girlfriend at a bar. The former girlfriend testified that they had an argument and Lewis was forced to leave. About two or three hours later, the bar security guard notified her that someone had tried to set fire to her car. When she went out to the car, she found the hood raised and there were burnt matches lying on top of the carburetor. This incident was reported to the police, but no charges resulted from it. When Lewis called a few days later, the girlfriend told him that she did not want to talk to him or see him anymore. In response, he told her she "was lucky it was [her] car and not something else."

The third arson incident occurred on September 8, 1980. Two weeks after Nancy Williams met Lewis in August 1980, Lewis told her about how he started cars and other things on fire with nail polish remover, hair spray or alcohol. Williams testified that Lewis offered to set fire to a car belonging to someone with whom Williams was angry. At that time, Williams was working as a nursing assistant at a local hospital. About a week before the arson incident, Williams decided she did not want

to see Lewis anymore. He continually called her at work and she refused to talk to him. After working the night shift on September 8, 1980, Williams went out to her car at about 7:00 a.m. and found the carpet and seat of her car burned. She also found burnt matches and paper in her car. She saw Lewis standing about a block away looking at her. Williams reported the incident to the police, but she did not want to press charges so the case was dropped. That day or the following day, Lewis called Williams at home. Williams testified at trial that she asked him why he had burned her car and he responded "I'm sorry I did it to you."

The State offered evidence of these three incidents to show motive, modus operandi, identity, intent, and common scheme or plan. The trial court ruled that evidence of all three incidents was admissible. The trial court gave the jury appropriate instructions regarding the limited use of the *Spreigl* evidence.

Minn.R.Evid. 404(b) provides that evidence of other wrongs is not admissible to prove character, but may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In applying this rule, the "preferred approach" is to "analyze the evidence and determine if the evidence is relevant and material to the state's case, if the evidence of the defendant's participation in the offense is clear and convincing, and if the probative character of the evidence outweighs its potential for unfair prejudice." *State v. Filippi,* 335 N.W.2d 739, 743 (Minn.1983). The decision whether to admit evidence of other crimes is largely within the discretion of the trial court. *State v. Campbell,* 367 N.W.2d 454, 460 (Minn.1985).

■ Lewis initially argues that evidence of his involvement in the three arson incidents is not clear and convincing. The evidence of Lewis' involvement in the 1975 arson is clear and convincing, because Lewis pleaded guilty to the crime and he was convicted. Despite the fact that Lewis was

not prosecuted for the two other incidents, the trial court could still find that the evidence of Lewis' participation in the incidents is clear and convincing. *See State v. Walker,* 310 N.W.2d 89, 91 (Minn.1981).

Proof of motive and an intentionally set fire satisfies the clear and convincing standard for *Spreigl* evidence. *State v. Hagen,* 361 N.W.2d 407, 411 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. Apr. 18, 1985) (citing *State v. Jacobson,* 326 N.W.2d 663 (Minn.1982)). Here, there is evidence that the 1978 incident was an attempt to intentionally set a car on fire and that the 1980 fire was intentionally set. There is also evidence that, at the time of the incident, Lewis had been rejected by and was angry at both women whose cars were subject to arson or attempted arson.

■ Next, Lewis argues that the evidence was not relevant to the State's case. In determining whether *Spreigl* evidence is relevant and material, "the trial court should consider the issues in the case, the reasons and need for the evidence, and whether there is a sufficiently close relationship between the charged offense and the *Spreigl* offense in time, place, or modus operandi." *State v. DeBaere,* 356 N.W.2d 301, 305 (Minn.1984). Here, the State needed the *Spreigl* evidence to prove its case against Lewis, because the defense tried to prove that at least three others had a motive for setting fire to Boeck's apartment.

In addition, the *Spreigl* incidents are similar in modus operandi to the 1985 arson. The only substantial difference is that the three *Spreigl* incidents involved cars rather than an apartment. With respect to all four incidents, there is evidence that Lewis was angry at each woman whose property was subject to arson (or attempted arson) and at some point he threatened each one of them. The dates of the three *Spreigl* incidents do not render the evidence inadmissible. Although the 1985 offense and the prior incidents are not closely related in time, they are closely related in modus operandi. *See State v. Matteson,* 287 N.W.2d 408, 411 (Minn.1979).

Finally, it is within the trial court's discretion to determine whether the probative value of the *Spreigl* evidence is sufficient to outweigh its potential for unfair prejudice. The trial court here did not abuse its discretion in determining that the evidence was relevant and that its relevance outweighed its potential for unfair prejudice.

## II.

The trial court denied Lewis' motion to vacate his conviction of second degree arson. We find this was error.

First degree arson is defined in Minn. Stat. § 609.561, subd. 1 (1984) as:

Whoever unlawfully by means of fire or explosives, intentionally destroys or damages *any building that is used as a dwelling* at the time the act is committed, whether the inhabitant is present therein at the time of the act or not, or any building appurtenant to or connected with a dwelling * * * commits arson in the first degree and may be sentenced to imprisonment for not more than 20 years or to a fine of not more than $20,000, or both.

(Emphasis added).

Second degree arson is defined in Minn. Stat. § 609.562 (1984) as:

Whoever unlawfully by means of fire or explosives, intentionally destroys or damages *any building not covered by section 609.561*, or any other real or personal property valued at more than $2,500 * * * may be sentenced to imprisonment for not more than ten years or to a fine of not more than $20,000 or both.

(Emphasis added).

■ There is no Minnesota case law that addresses whether a defendant can be convicted of both first and second degree arson for setting one building on fire. However, a clear reading of the statute indicates that, if a building subject to arson is a dwelling, section 609.561 applies to the criminal conduct and section 609.562 is inapplicable.

Apparently, Lewis was charged with both first and second degree arson based on the view that the apartment was both a dwelling in relation to Boeck and a building that was not a dwelling in relation to the owners of the apartment complex. The trial court appears to have followed this same reasoning.

Based on the statute, we believe that an apartment is either a dwelling or a building that is not a dwelling, but not both. There is no question that Boeck's apartment is a dwelling and that Lewis could be convicted of first degree arson. However, the mere fact that the owners did not reside in Boeck's apartment does not change its character as a dwelling and permit it to fall under section 609.562 as well as section 609.561. Lewis' conviction of second degree arson must be vacated.

## III.

Lewis' final argument is that the trial court abused its discretion in aggravating his sentence for first degree arson. Based upon a criminal history score of one and an offense severity level of VII, the presumptive sentence for first degree arson is thirty-two months executed. The trial court sentenced Lewis to forty-eight months.

The trial court based its durational departure upon the following summarized factors: (1) the crime was one of vengeance, revenge, and utter disregard for the safety of others in the apartment building; (2) the crime caused the death of Boeck's cat; (3) Lewis had a pattern of setting fires to revenge women who rejected him; (4) he evidenced sophisticated arson methods; (5) the damage resulting from the fire was extensive; (6) Lewis was in violation of a restraining order when he committed the offense; (7) he was convicted of a similar offense in 1975; (8) he does not express remorse for his criminal conduct; and (9) he shows a consistent pattern of criminal activity and appears to be a clear and present danger to the community.

■ A trial court may depart from the sentencing guidelines when substantial and compelling circumstances are present. *State v. Back*, 341 N.W.2d 273, 275 (Minn.

1983) (quoting *State v. Kindem*, 313 N.W.2d 6, 7 (Minn.1981)). The trial court has broad discretion in deciding whether to depart from the guidelines and it will not be reversed absent an abuse of that discretion. *Id.* The general issue to be resolved in determining whether to depart durationally is whether the defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime in question. *State v. Broten*, 343 N.W.2d 38, 41 (Minn.1984). The trial court should focus on the degree of the defendant's culpability. *State v. Wright*, 310 N.W.2d 461, 462 (Minn.1981). Thus, generally a sentencing court can consider the course of conduct underlying the crime for which the defendant is being sentenced. *Broten*, 343 N.W.2d at 41.

■ Initially, we note that factor (9) which addresses the dangerousness of Lewis is not a proper factor to justify a durational departure. *See State v. Gardner*, 328 N.W.2d 159, 162 (Minn.1983). Further, factor (7) which addresses Lewis' prior felony conviction of arson is not a proper factor for a durational departure because the sentencing guidelines have already accounted for that offense in the calculation of Lewis' criminal history score. *See State v. Erickson*, 313 N.W.2d 16, 18 (Minn.1981).

■ We also do not consider that factor (3) dealing with Lewis' pattern of setting fires is a proper departure factor. A sentencing court may only consider evidence that points to the defendant's guilt of other offenses if it supports the conclusion that the defendant committed the offense in question in a particularly serious way. *Back*, 341 N.W.2d at 276. Under the facts of this case, we do not believe that Lewis' pattern of setting fires indicates that Lewis committed the arson in a particularly serious way. Following the principle set forth in *Back*, however, the trial court could properly consider the fact that Lewis was in violation of a restraining order when he set the fire.

■ Excluding factors (3), (7) and (9), the trial court enumerated sufficient aggravating factors to justify the departure. The six remaining factors relate to Lewis' culpability for this offense. In particular, we note that factor (8), Lewis' lack of remorse, can relate back and be considered as evidence bearing on the cruelty or seriousness of his conduct on which the conviction is based. *See State v. McGee*, 347 N.W.2d 802, 806 n. 1 (Minn.1984). We conclude that the trial court could appropriately determine that Lewis' conduct was significantly more serious than that typically involved in first degree arson. *See Broten*, 343 N.W.2d at 41 (defendant's conduct, which was motivated by revenge and caused damage directly to property owners and indirectly to others, was more serious than the conduct underlying a typical arson conviction).

## DECISION

The trial court did not abuse its discretion in admitting the *Spreigl* evidence or in departing durationally when sentencing Lewis for his first degree arson conviction. Lewis' conviction of second degree arson is vacated.

Affirmed in part, vacated in part and remanded for vacation of appellant's conviction and sentence for arson in the second degree.