STATE of Minnesota, Respondent,

v.

Kurt Dean DOUGHMAN, Appellant.

No. CX–86–1234.

Court of Appeals of Minnesota.

April 28, 1987.

Review Denied June 26, 1987.

Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Sp. Asst. Atty. Gen., St. Paul, Hugh Cameron, Itasca Co. Atty., Grand Rapids, for respondent.

C. Paul Jones, State Public Defender, Bradford Colbert, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by FORSBERG, P.J., and RANDALL and STONE *, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

Appellant Kurt Doughman was convicted of attempted assault in the first degree, Minn.Stat. §§ 609.221, 609.17 (1984), attempted arson in the third degree, Minn. Stat. §§ 609.563, subd. 1(a), 609.17 (1984), and possession of explosives, Minn.Stat. § 299F.811 (1984). On appeal he challenges the sufficiency of evidence, admis-

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

sion of *Spreigl* evidence, a trial court ruling which allegedly deprived him of his right to testify, and an upward departure of 27½ months. We affirm.

## FACTS

On the morning of February 16, 1984,[1] Clarence Carlton noticed that his ax was missing. Carlton noticed footprints in the snow going from the road to the wood pile and called the Itasca County Sheriff. Responding to the call, Deputy Steven Kovacic measured and photographed the footprints.

Later, Carlton made a makeshift ax and began splitting wood. As he split a piece of wood, he heard a loud clink and saw an iron pipe inside the wood. Carlton again summoned the sheriff and the log and pipe were turned over to the Bureau of Criminal Apprehension (BCA).

James Lansing, BCA expert in firearms and explosive devices, testified the pipe contained one pound of gunpowder and had been welded. Barbara Evans, BCA expert in trace evidence, testified that the photographs of the footprints were not sufficiently detailed to make a complete analysis, but that appellant could not be excluded as having made the footprints. Warren Parker, explosives expert from the Bureau of Alcohol, Tobacco and Firearms, testified that if the pipe bomb had been put in Carlton's wood stove, it would have caused an explosion, projecting everything inside the stove throughout the cottage, and producing secondary fires.

William McGowan, a friend of appellant's, testified that he helped appellant weld a pipe the evening before the pipe bomb was discovered. Appellant had been living on McGowan's property at the time. McGowan had several vehicles on his property and appellant had his own car.

At a pretrial *Spreigl* hearing Carlton and Timothy Bresnahan testified that in September 1982 Carlton and appellant had an argument over an old telephone debt owed by appellant. They testified that Carlton asked appellant to leave his house and appellant threatened to destroy Carlton's house. There was testimony about several other *Spreigl* incidents involving appellant and his involvement with arson, including an incident in October 1983 involving a fire in Carlton's basement. The trial court concluded that none of these incidents were admissible at trial. The trial court reaffirmed this decision prior to trial.

Carlton testified to the events of February 16 and that appellant had owed him $50. He testified that appellant was angry in September 1982 when he left Carlton's house. The State requested a further *Spreigl* hearing concerning appellant's threats because Bresnahan reported that appellant's testimony at the pretrial *Spreigl* hearing was inconsistent with what he told a police officer a month earlier. Bresnahan testified that as appellant left Carlton's house he threatened to "bomb" the house. The trial court ruled that this was a significant change and was relevant. Bresnahan testified to appellant's threat to bomb Carlton's house to the ground. In corroboration, Deputy Patrick Medure testified that in a phone interview in April 1986 Bresnahan told him that appellant had threatened to blow up Carlton's house.

Following appellant's convictions, he was sentenced to 60 months imprisonment for the assault, an upward departure of 27½ months from the presumptive 32½ month sentence under the guidelines for a severity level VIII offense, and a criminal history score of 2.

## ISSUES

1. Was the evidence sufficient?

2. Did the trial court abuse its discretion in admitting *Spreigl* evidence?

3. Did the trial court deprive appellant of his right to testify by ruling that appel-

---

**1.** Appellant was tried in April 1984. His conviction was reversed by the court of appeals because certain *Spreigl* evidence regarding the burning of a barn was improperly admitted. *State v. Doughman,* 368 N.W.2d 357 (Minn.Ct.

App.1985). On further review the Minnesota Supreme Court affirmed the court of appeal's decision. *State v. Doughman,* 384 N.W.2d 450 (Minn.1986). The second trial began on May 20, 1986.

lant could be impeached with suppressed evidence?

4. Did the trial court abuse its discretion in departing upward from the sentencing guidelines?

## ANALYSIS

### I.

■ When a conviction is based on circumstantial evidence, the jury's verdict will be upheld if the circumstances proved are consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of his guilt. *State v. Berndt*, 392 N.W.2d 876, 880 (Minn.1986), *cert. denied*, — U.S. —, 107 S.Ct. 909, 93 L.Ed.2d 859 (1987). The evidence as a whole need not exclude all possibility that the defendant is innocent; it must only make such a theory seem unreasonable. *State v. Anderson*, 379 N.W.2d 70, 78 (Minn.1985). The evidence need not be consistent only with a specific theory advanced by the prosecution. *State v. Race*, 383 N.W.2d 656, 662 (Minn.1986). On review, the evidence must be viewed in the light most favorable to the State and it must be assumed that the jury believed the State's witnesses and disbelieved any contradictory evidence. *State v. Wahlberg*, 296 N.W.2d 408, 411 (Minn.1980). Because the jury is in the best position to observe the demeanor of witnesses and to weigh their credibility, jury verdicts based on circumstantial evidence are given due deference. *Anderson*, 379 N.W.2d at 77; *Race*, 383 N.W.2d at 662.

■ In this case, there was no direct evidence that appellant placed the pipe bomb in Carlton's wood pile. However, there was circumstantial evidence that appellant had welded a pipe similar to the explosive device found at the scene of the crime and that appellant's feet could have made the footprints found in the snow going from the road to Carlton's house. Appellant knew that Carlton used a wood stove to heat his home. Further, the State presented evidence of a motive in that Carlton testified he had an argument with appellant over a telephone bill which appel-

lant owed. When confronted about the bill, appellant became angry and was asked to leave. Timothy Bresnahan testified that he was present that day and that as appellant left he shouted that he was going to bomb Carlton's house to the ground. This testimony was corroborated by Deputy Sheriff Medure who testified that Bresnahan reported that appellant threatened to blow up Carlton's house. Expert testimony established that the pipe bomb would have leveled the house. Evidence also showed that appellant had the opportunity to commit the crime because on the evening of February 15, 1984, appellant was driving his own vehicle or had access to several vehicles from McGowan's residence. The jury could reasonably conclude that appellant was guilty of the charged offenses.

### II.

■ Evidence of a defendant's bad acts are generally inadmissible. Such evidence, however, is admissible in the discretion of the trial court, if the court determines (1) there is clear and convincing evidence that the defendant participated in the other acts, (2) the evidence is relevant to the State's case, and (3) the probative value of the evidence outweighs its potential for unfair prejudice. *State v. Kilker*, 400 N.W.2d 450, 452 (Minn.Ct.App.1987); *State v. Doughman*, 384 N.W.2d 450, 454 (Minn. 1986). We will not reverse a trial court's *Spreigl* ruling unless an abuse of discretion is clearly shown. *Doughman*, 384 N.W.2d at 454.

■ Here the trial court initially ruled at a pretrial hearing that the *Spreigl* incident in which appellant allegedly stated "I'm going to level the place," was not shown to be connected closely enough to the State's case and that it would cause unfair prejudice. However, in the middle of trial the prosecutor asked the court to reconsider its ruling because Bresnahan advised the prosecutor that his prior statement to investigating officer Medure was inconsistent with his testimony at the *Spreigl* hearing. Bresnahan, outside the jury, testified that appellant yelled out the window of his car, "I'm going to level the place, I will bomb it

right to the ground." The court then ruled that since this threat involved appellant's use of the term "bomb" it was relevant. The court reminded defense counsel that any question regarding Bresnahan's credibility was for the jury and ruled the evidence admissible. Defense counsel vigorously cross-examined Bresnahan on his failure to mention "bomb" at the earlier hearing.

Bresnahan's testimony provided clear and convincing evidence that appellant said he would bomb Carlton's house. Further, we note that this testimony was corroborated by Deputy Medure who confirmed Bresnahan had told him appellant said he would blow up Carlton's house. The evidence was highly relevant in bearing on the relationship between appellant and Carlton and establishing a motive and appellant's intent to commit the present crimes. The incident was not too remote. While it occurred 18 months before the crime, appellant was in custody for approximately 14 of those months and was incapable of committing the crime during this time. *See State v. Filippi*, 335 N.W.2d 739, 743–44 (Minn. 1983). The court also determined that the threat to bomb the house was "generically involved with the case" and of sufficient probative value to outweigh any prejudice. We find no abuse of discretion.

### III.

At the close of the State's case appellant requested a ruling on whether evidence which had been suppressed would be admissible if appellant took the stand. The suppressed evidence was an ax, alleged to be Carlton's, extra pipe, extra screws and gunpowder, all illegally obtained by police officers. Appellant offered to testify only about the telephone bill which Carlton claimed appellant owed and with respect to the bomb threat he allegedly made to Carlton. The State argued that by testifying to these matters on direct examination, appellant would open the door to his involvement with all aspects of the crime. The trial court ruled that if appellant took the stand and "opens the door by denying certain evidentiary matters that have [been] sup-

pressed, it can be utilized on cross-examination." Appellant then refused to testify.

■ Appellant claims the court's ruling was erroneous and deprived him of his right to testify on his own behalf. We disagree. A defendant's statements made in response to proper cross-examination reasonably suggested by the defendant's direct examination are subject to proper impeachment by the government, including impeachment by evidence that has been illegally obtained and that is inadmissible as substantive evidence of guilt in the government's direct case. *United States v. Havens*, 446 U.S. 620, 627–28, 100 S.Ct. 1912, 1916–17, 64 L.Ed.2d 559 (1980).

### IV.

■ Appellant was sentenced to 60 months imprisonment for attempted assault in the first degree, a 27½ month upward departure. The trial court cited as departure factors:

[T]he particular heinousness of the offense involved, the particular vulnerability of the victims by the attempted crime involved, that the psychological damage involved with the victim [demonstrated] a particular cruelty, that the attempted offense was a major economic offense that would involve the destruction of the home of the victim under the expert testimony, that the planning, evidenced by the preparation for the crime, involved complete sophistication, that there can be no question of the overwhelming guilt of the defendant based upon the evidence produced in this courtroom alone * * *. The invasion of a person's homestead by the planting of a pipe bomb is not to be tolerated.

The trial court has discretion to depart if the offense involves "substantial and compelling circumstances." *State v. Garcia*, 302 N.W.2d 643, 647 (Minn.1981). We agree with appellant that several of the factors cited by the court in this case are not permissible departure factors. This was not a major economic offense as contemplated by Minnesota Sentencing Guidelines II.D.2.b.(4). Neither was the vulnerability of the victims exploited in the plant-

872

ing of the pipe bomb. *See State v. Gardner*, 328 N.W.2d 159, 162 (Minn.1983). Further, the fact that there was overwhelming evidence cannot be a departure factor since this is often the case for convicted defendants.

However, we believe there were substantial and compelling circumstances justifying departure in this case. The record shows this was a crime of revenge in which appellant disregarded the safety of others. *State v. Lewis*, 385 N.W.2d 352, 356–57 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. May 29, 1986). *See also State v. Broten*, 343 N.W.2d 38, 41 (Minn.1984). Further, the offense was committed in a particularly serious way, *State v. O'Brien*, 369 N.W.2d 525, 527 (Minn.1985), which represented a greater than normal danger to the safety of other people. *State v. McClay*, 310 N.W.2d 683, 685 (Minn.1981).

### DECISION

Appellant's convictions and sentence are affirmed.