# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-01927-COA

DWALIUES DEON CARTER A/K/A DWALIUES       APPELLANT
D. CARTER A/K/A DWALIUES CARTER A/K/A
DWALIUE DEON CARTER A/K/A DWALIEU
DEON CARTER A/K/A DEON CARTER A/K/A
DWALIE CARTER

v.

STATE OF MISSISSIPPI       APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 08/15/2013 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES ANDRE DE GRUY |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD JOHN R. HENRY JR. |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNTS I AND II, CAPITAL MURDER; COUNT III, HOUSE BURGLARY; COUNT IV, CONSPIRACY TO COMMIT HOUSE BURGLARY; AND COUNT V, CHILD NEGLECT; AND SENTENCED, IN EACH OF COUNTS I AND II, TO LIFE WITHOUT ELIGIBILITY FOR PAROLE; IN COUNT III, TO TWENTY-FIVE YEARS; AND IN EACH OF COUNTS IV AND V, TO FIVE YEARS; WITH ALL SENTENCES TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED - 06/28/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., BARNES AND GREENLEE, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     Dwaliues Carter was convicted on two counts of capital murder with the underlying felony of robbery, one count of house burglary, one count of conspiracy to commit house burglary, and one count of felony child neglect. He received two life sentences without parole for the murders, twenty-five years for the burglary, five years for conspiracy, and five years for felony child neglect. On direct appeal, Carter argues that the trial court erred in allowing the State to introduce bad-act evidence via hearsay, that the State failed to prove "substantial harm" relating to felony child neglect, that the State's conspiracy jury instruction was constructively amended from the indictment, and that the trial court erred in denying his motion to suppress statements given to the police. Finding no error, we affirm.

## FACTS AND PROCEEDINGS BELOW

¶2.     On Wednesday, January 26, 2011, a Hinds County sheriff's deputy discovered the bodies of Robert Lewis Carter Sr. (Robert) and his fianceé, Renita Lee Mark (Renita), at Robert's home following an inquiry into an abandoned truck registered in Robert's name. The victims had died from multiple gunshot wounds. The couple's seven-month-old infant, Robert Carter Jr., was found on the floor of the house, hungry, crying, and in need of a diaper change.

¶3.     Investigators considered Robert's brother, Carter, as a suspect after learning from a neighbor that the brothers had a recent altercation over an automobile. When interviewed by

2

law enforcement, Carter initially requested an attorney when read his *Miranda*[1] rights. However, when the police stopped the interrogation pursuant to his request for an attorney, Carter continued to ask the police questions and stated that he would talk with them. He signed an acknowledgment and waiver of his *Miranda* rights. After a break, Carter was re-Mirandized, and law enforcement conducted a second interview in which Carter confessed to his role in the crimes. The interviews were audio and video recorded and shown to the jury at trial.

¶4.    In the interview, Carter confessed to burglarizing his brother's home with his acquaintance Travaris Christian (Travaris). Carter was angry at his brother Robert for not allowing their mother and him to stay at Robert's house anymore. He stated that his role in the burglary was to get his brother to open the door and so that Travaris could come in with the gun. He claims that it was Travaris who actually pulled the trigger in the shootings. He acknowledged that he had heard the child crying in the house.

¶5.    Codefendant Alonzo Christian (Alonzo) testified that on the night of the murders he drove Carter and Travaris to Robert's house knowing that their intent was to burglarize Robert's house. Carter had been staying intermittently at the house of Alonzo and Alonzo's girlfriend, Rhonda Fay Shannon (Rhonda Fay).

¶6.    Rhonda Faye testified that around 1 a.m. on Tuesday morning, January 25, 2011, Carter came to her and Alonzo's house carrying a television Carter claimed his brother had given him. While cleaning a day or two later, she discovered a gun hidden in a shoe box in

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

her house. Rhonda Faye called the police, who came and took the gun. She testified that both Travaris and Carter had access to her house. The State's expert testified that the gun was a match for the bullets that killed Robert Sr. and Renita.

¶7. Renita's twin sister, Renata, testified that she often stayed with Robert and Renita, and that Renita would stay with their mother in McComb whenever Robert was offshore working because Renita did not feel safe around Carter by herself. Renata testified that Carter had lived intermittently at Robert's house; however, Robert had recently told Carter that he could no longer stay with him. The defense objected at various points to parts of Renata's testimony as hearsay, including testimony that Renita told Renata that Carter attempted to "run over" Robert and that Carter, with his mother, "jumped on" Renita. The trial court sustained several of the defense's objections to Renata's testimony as speculation and hearsay. The defense did not request that the jury be instructed to disregard Renata's comments.

¶8. Testimony from the prosecution established that the murders took place late Monday night, January 24, or early Tuesday morning, January 25. Robert and Renita's bodies and the infant were discovered Wednesday. The sheriff's deputy who found the bodies testified that he found the infant screaming on the floor in the fetal position with a lot of feces in his diaper. Additional responding officers testified similarly to the child's abandoned state and to his dehydration. Responding officers changed the child's diaper and fed him milk found in the refrigerator prior to the victim's assistance officer arriving to take the child.

¶9. At trial the State asked the medical examiner – who did not examine or treat the infant

4

– to answer hypothetically, "What are the outlooks for that child at seven months old under those conditions?" The witness replied, "It would certainly be a very traumatic situation for that child . . . . Certainly any infant or toddler requires quite a bit of care. I'm sure a lot of people know they need a lot of attending to and to be fed and diapered several times a day."

¶10. At trial the defense objected to the conspiracy jury instruction, arguing that it varied impermissibly from the indictment. The indictment charged all three men, stating:

> Travaris Richard Christian, Alonzo Christian[,] and Dwaliue Deon Carter did wilfully, unlawfully, and feloniously conspire and agree each with the other to commit a crime against the State of Mississippi, to-wit: to burglarize the dwelling house of Robert Lewis Carter, located at 1323 Timberidge Rd., Terry, Mississippi, said object of said conspiracy being a felony, in violation of Mississippi Code Annotated [section] 97-1-1 (1972), as amended.

The jury instruction charged the jury to find Carter guilty if it found beyond a reasonable doubt that he:

> Did willfully, unlawfully, and feloniously conspire and agree with Alonzo Christian and Travaris Richard Christian, or either of said persons, to commit a crime against the State of Mississippi, to-wit: to burglarize the dwelling house of Robert Lewis Carter . . . .

Carter argued that the "or either of said persons" language impermissibly altered the allegation of the indictment that all three men participated in the conspiracy.

¶11. The court denied Carter's motion to suppress his confession, finding that Carter voluntarily waived his *Miranda* rights and that his confession was admissible.

¶12. Carter now appeals. In addition to the brief submitted by Carter's counsel, Carter submitted a supplemental pro se brief arguing that the trial court erred in denying his motion to suppress his confession.

**DISCUSSION**

### I. Whether the trial court erred in allowing the State to introduce bad-act evidence via hearsay.

¶13. This Court reviews the trial court's admission or exclusion of evidence for abuse of discretion. *O'Connor v. State*, 120 So. 3d 390, 396 (¶16) (Miss. 2013).

¶14. Carter argues that Renata's testimony concerning alleged altercations between Robert and Carter prior to the homicides, including testimony that Renita told Renata that Carter attempted to "run over" Robert and that Carter and his mother "jumped on" Renita, was hearsay evidence of prior bad acts constituting reversible error. The State argues that Renata's testimony was relevant to show Carter's possible motive and intent to commit the crimes. The State further argues that even if certain testimony, was inadmissible hearsay, it was harmless in light of the other overwhelming testimony including Carter's confession.

¶15. While evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith, it may "be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." M.R.E. 404(b). Here, Renata's testimony regarding the "bad blood" between the brothers was relevant to telling the complete story and to demonstrating Carter's motive and intent following Robert throwing Carter out of Robert's house. *See Moore v. State*, 921 So. 2d 381, 384 (¶10) (Miss. Ct. App. 2005) (permitting admission of evidence of prior bad acts to show intent and motive).

¶16. We also note that the trial court sustained several of the defense's objections to Renata's testimony as speculative and as hearsay, and that the defense did not request that

the jury be instructed to ignore her statements. "It is the rule in this State that where an objection is sustained, and no request is made that the jury be told to disregard the objectionable matter, there is no error." *Marks v. State*, 532 So. 2d 976, 981 (Miss. 1988).

¶17. Moreover, even if we were to construe any of Renata's testimony as inappropriately admitted, "[a]n error is harmless when it is apparent on the face of the record that a fair-minded jury could have arrived at no verdict other than that of guilty." *Havard v. State*, 928 So. 2d 771, 797 (¶54) (Miss. 2006) (citing *McKee v. State*, 791 So. 2d 804, 810 (¶24) (Miss. 2001)). The jury did not consider only Renata's testimony, but also the testimony of other witnesses and Carter's confession, including his statements that he was angry at his brother for refusing to let him continue to stay at his house. In light of the amount of other evidence presented to the jury, Renata's statements did not create reversible error. This issue is without merit.

## II. Whether the evidence of felony child neglect was insufficient.

¶18. Carter argues that the State failed to prove substantial harm to the child supporting a conviction of felony child neglect under Mississippi Code Annotated section 97-5-39(1)(a)-(b) (Supp. 2011). When reviewing a challenge to the sufficiency of the evidence, this Court determines whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005). "The critical inquiry is whether the evidence shows 'beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed[.]'" *Id.*

7

¶19. The Mississippi Legislature amended section 97-5-39 in 2005 to provide that intentional child deprivation resulting in substantial harm constitutes a felony. *See Lenard v. State*, 51 So. 3d 239, 245 (¶21) (Miss. Ct. App. 2011)[2] (holding that felony child deprivation is not a strict-liability offense but rather requires proof that the acts or omissions were negligent or intentional). To support a felony conviction, the State was required to prove that Carter willfully, unlawfully, and knowingly deprived the child of food, care, or supervision appropriate for the child's age, which resulted in substantial harm to the child's physical, mental, or emotional health. Miss. Code Ann. § 97-5-39(1)(a)-(b).[3]

¶20. "Substantial harm" is a concept applied broadly across a range of civil[4] and criminal contexts. Courts and legislatures have generally declined to define it with exactness. In a criminal context, the threshold to support a finding of "substantial harm" is significantly lower than that for a finding of graver incidents such as "substantial bodily harm" or "serious bodily injury." In the context of felony child abuse, "serious bodily harm" is defined as "bodily injury which creates a substantial risk of death, or permanent or temporary disfigurement, or impairment of any bodily organ or function." *Wolfe v. State*, 743 So. 2d

---

[2] The *Lenard* opinion as originally published incorrectly stated the year of amendment as 2007.

[3] Some jurisdictions permit that a risk of substantial harm is sufficient for the finding of felony child neglect. *See Wood v. Com.*, 701 S.E.2d 810, 815 (Va. Ct. App. 2010).

[4] Civilly, evaluating "substantial harm" is particularly relevant in the context of determining child custody and visitation. "The concept of substantial harm . . . includes . . . neglect, abuse, abandonment of rights, and is broad enough to include 'any other circumstances, such as prolonged separation of the child from its natural parents, that would cause the child to suffer substantial harm.'" *Ramirez v. Ramirez*, 124 So. 3d 8, 16 (La. Ct. App. 2013).

380, 385 (¶24) (Miss. 1999). Substantial harm, by contrast, does not necessarily implicate a substantial risk of death, and includes harm to mental and emotional health. Something "substantial" is "actually existing; real; not seeming or imaginary." Black's Law Dictionary 1597 (4th ed. 1968). This is not at the level of "serious," which is defined as "critical, crucial, dire, dreadful, fatal, severe." *Id*.

¶21.    The facts of the Minnesota case *State v. Mitchell* provide a sobering illustration of the trajectory the infant in this case was on at the time he was fortunately discovered by the Hinds County Sheriff's Office.[5] In *Mitchell*, an infant died from malnutrition after the mother fed the child nothing but water for 19 days.[6] Here, Robert Jr. was not fed liquids of any kind, but fortunately was discovered after two days.

¶22.    The jury heard Carter's acknowledgment in his confession that he heard the child crying in the house at the time of the murders and left the child there. The jury was presented with evidence that the child remained alone on the floor for almost two days, and that during that time the child did not eat or drink anything and that his diaper was not changed, resulting in the hungry, dehydrated, and filthy condition the officers found him in on the floor of the

---

[5] Minnesota has a similar statute to Mississippi's providing a felony for child neglect where a child is willfully deprived of necessary food, clothing, shelter, or supervision appropriate to the child's age and substantial harm results to the child's physical, mental, or emotional health. Minn. Stat. § 609.378, subd. 1(a)(1).  In Minnesota, felony child neglect may properly serve as the predicate offense for the charge of felony murder. *State v. Mitchell*, 693 N.W.2d 891, 894 (Minn. Ct. App. 2005).

[6] The mother was charged with felony child abuse, and that felony served as the underlying felony for felony murder of the child. The degree of lack of food in the child's system was confirmed by autopsy, a procedure obviously not available here where the child survived and immediately had his physical needs addressed. *Mitchell*, 693 N.W.2d at 892.

9

house with the deceased bodies of his parents.

¶23. The jury heard the medical examiner testify to the appropriate level of care required for a child that age and that the experience of deprivation, especially given the circumstances, would be traumatic. The testimony concerning a child of that age's physical needs is consistent with parallel testimony from other jurisdictions. *See, e.g., Harvey v. Richmond Dep't of Soc. Servs.*, No. 0637-03-2, 2003 WL 22006023, at \*1 (Va. Ct. App. 2003) (evidence presented that seven-month-old "daughter's primary need was to be fed every three hours").

¶24. Considering the evidence in the light most favorable to the verdict, we conclude that the jury was presented with sufficient evidence to support its finding that Carter was guilty of felony child neglect. This issue is without merit.

### III. Whether jury instruction S-7 constructively amended the indictment.

¶25. Carter argues that the indictment was constructively amended because the indictment charged a conspiracy between all three codefendants, but the conspiracy jury instruction gave the jury the option of convicting with only two conspirators. The Mississippi Supreme Court has held:

> A constructive amendment of the indictment occurs when the proof and instructions broaden the grounds upon which the defendant may be found guilty of the offense charged so that the defendant may be convicted without proof of the elements alleged by the grand jury in its indictment.

*Bell v. State*, 725 So. 2d 836, 855 (¶58) (Miss. 1998); *see also United States v. Miller*, 471 U.S. 130, 144 (1985). However, "[n]ot all variances between the indictment and instructions

constitute a constructive amendment." *Bell,* 725 So. 2d at 855 (¶61). Rather, "[t]he central question is whether the variance is such as to substantially alter the elements of proof necessary for a conviction." *Id.*

¶26.    The Mississippi Supreme Court has consistently held that indictments worded similarly and even more broadly than the one at hand sufficiently put the defendant on notice of the conspiracy charge against him. In *Berry v. State*, 996 So. 2d 782, 789 (¶21) (Miss. 2008), the court stated "the indictment stated that Berry 'unlawfully and feloniously' had conspired *with others* to commit the crime of possession of precursors. . . . The State only had to prove that two or more persons agreed to commit a crime." (Emphasis added) (citing Miss. Code Ann. § 97-1-1 (Rev. 2006)). And in *Farris v. State*, 764 So. 2d 411, 421 (Miss. 2000), the court affirmed a conspiracy conviction where the indictment included the following wording:

> [T]he Defendants herein[] did willfully, knowingly, unlawfully, and feloniously conspire and agree together and with the late Chancery Judge William Robert Taylor, the late Charles Morgan, *and with persons known and unknown to the Grand Jury*, to cheat and defraud the conservatorship of Jack Diamond out of property and money . . . .

(Emphasis added).

¶27.    Here, the language of the jury instruction did not add a factual basis for conviction, modifying an essential element of the offense charged. *See United States v. Adams*, 778 F.2d 1117, 1123 (5th Cir. 1985).[7] The alteration between the indictment and the instruction was

---

[7] The indictment charges the three individuals using the conjunction "and." Ordinarily, disjunctive variations or phases of a statutory crime may be alleged conjunctively. *See Ellard v. State*, 248 Miss. 313, 158 So. 2d 690, 691 (1963); *Brady v. State*, 128 Miss. 575, 91 So. 277, 278 (1922).

11

not material. The indictment tracked the language of the statute and sufficiently informed Carter as to the factual basis of the conspiracy charge against him. This issue is without merit.

### IV. Whether the trial court abused its discretion when it denied Carter's motion to suppress his confession.

¶28. Carter argues in his pro se supplemental brief that the trial court abused its discretion when it denied the motion to suppress his confession. For a confession to be admissible, it must have been given voluntarily, without threats, coercion, or offer of reward. *Franklin v. State*, 170 So. 3d 481, 485 (¶14) (Miss. 2015). A trial court's finding that a confession was voluntarily given should not be overturned unless it was clearly erroneous or contrary to the overwhelming weight of the evidence. *Id*.

¶29. The record is clear that Carter was properly advised of his *Miranda* rights multiple times and that he voluntarily waived them. The officers ceased interrogation immediately at Carter's initial request for an attorney and did not resume questioning until Carter signed an acknowledgment that he understood his rights and that he would talk with law enforcement without a lawyer. Carter was then re-Mirandized at the start of the second recorded interview. The trial court did not err in denying Carter's motion to suppress his confession.

### CONCLUSION

¶30. Carter received a fair trial. Renata's testimony to the jury did not constitute reversible error. The evidence presented to the jury was sufficient to support a finding of felony child neglect. The conspiracy jury instruction did not constructively amend the indictment. Carter voluntarily waived his *Miranda* rights, and his confession was therefore admissible. We

12

affirm Carter's convictions and sentences.

¶31.   **THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, OF CONVICTION OF COUNTS I AND II, CAPITAL MURDER; COUNT III, HOUSE BURGLARY; COUNT IV, CONSPIRACY TO COMMIT HOUSE BURGLARY; AND COUNT V, CHILD NEGLECT; AND SENTENCE, IN EACH OF COUNTS I AND II, OF LIFE WITHOUT ELIGIBILITY FOR PAROLE; IN COUNT III, OF TWENTY-FIVE YEARS; AND IN EACH OF COUNTS IV AND V, OF FIVE YEARS; WITH ALL SENTENCES TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR AND WILSON, JJ., CONCUR.  JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**