**STATE of Minnesota, Respondent,**

v.

**Jerrett Lee ANDERSON, Appellant.**

No. C9–02–1043.

Supreme Court of Minnesota.

Aug. 7, 2003.

Barry V. Voss, Voss and Hickman, P.A., Minneapolis, for Appellant.

Michael A. Hatch, Minnesota Attorney General, St. Paul, Amy Klobuchar, Hennepin County Attorney, Thomas A. Weist, Assistant County Attorney, Minneapolis, for Respondent.

## OPINION

BLATZ, Chief Justice.

In this pretrial appeal, appellant Jerrett Lee Anderson challenges the court of appeals' decision reversing the district court's dismissal of the charge of unintentional second-degree felony murder for lack of probable cause. Anderson argues that, when the second-degree felony-murder statute is read in conjunction with our prior holdings, the court of appeals' decision must be reversed. We agree and hold that the predicate offenses of felon in possession of a firearm[1] and possession of a stolen firearm cannot support the charge of unintentional second-degree felony murder.

The facts giving rise to this appeal are not in dispute. On February 26, 2002, Jerrett Lee Anderson arrived at Blake Rogers' residence in Minneapolis and, at about 10:45 p.m., joined Rogers and a friend of Rogers in Rogers' bedroom. While there, Anderson showed them a 12–gauge shotgun, which was missing its rifle stock, and stated that the shotgun had been stolen. Rogers' friend handled the shotgun, and all three noticed that the shotgun was loaded. As the shotgun was returned to Anderson, Rogers was kneeling in front of his stereo system, inserting compact discs. Anderson then pointed the shotgun at Rogers, and it discharged, killing Rogers. Anderson and Rogers' friend fled the residence.

Anderson was charged with second-degree unintentional felony murder, in violation of Minn.Stat. § 609.19, subd. 2(1) (2002), and third-degree murder ("depraved mind" killing), in violation of Minn. Stat. § 609.195(a) (2002). The district court dismissed the second-degree felony-murder charge, ruling that felon in possession of a firearm and possession of a stolen firearm are not proper predicate offenses for second-degree felony murder.

The state appealed under Minn. R.Crim. P. 28.04, subd. 1, which permits appeals from pretrial orders of the trial court. In a 2–1 decision, the court of appeals concluded that possession of a loaded, stockless shotgun pointed at the victim was inherently dangerous. *State v. Anderson,* 654 N.W.2d 367, 372 (Minn.App.2002). Accordingly, the court of appeals held that the district court erred in dismissing the second-degree felony-murder charge. *Id.* The dissenting judge argued that there is

---

1. Minnesota Statutes section 624.713, which defines this offense, is entitled "Certain Persons Not to Have Pistols or Semiautomatic Military–Style Assault Weapons." For ease of reference we will adopt the parties' description of this offense for the purposes of this opinion.

nothing inherently dangerous about the two predicate unlawful firearm possession offenses. *Id.* at 373. Viewing the majority holding as an unwarranted extension of the felony-murder doctrine to "status" offenses,[2] the dissenting judge explained that she "would [have affirmed] the trial court's pretrial order dismissing the unintentional murder in the second-degree (felony-murder) charge on the grounds that the 'status' offenses of unlawful possession of a firearm and possession of a stolen firearm cannot serve as predicate offenses to felony-murder." *Id.* at 372, 375. It is from this court of appeals' decision that Anderson appeals.

▆▆▆ The single issue presented by this case is whether the offenses of felon in possession of a firearm and possession of a stolen firearm are proper predicate offenses for a charge of unintentional second-degree felony murder. This issue is a question of law, subject to de novo review. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984). Whether a statute has been properly construed is also a question of law, reviewed de novo. *State v. Stevenson,* 656 N.W.2d 235, 238 (Minn.2003).

We begin with the statutory provisions at issue. The felon-in-possession statute provides that a person who has been adjudicated delinquent of a crime of violence shall not be entitled to possess a firearm for 10 years following restoration of civil rights or expiration of his or her sentence, and a violator is subject to a penalty of up to 15 years imprisonment or a $30,000

penalty, or both.[3] Minn.Stat. § 624.713, subds. 1(b), 2 (2002). Similarly, the receiving stolen property statute provides that the offense of possession of a stolen firearm is subject to up to 20 years confinement or a fine of $100,000, or both. Minn. Stat. §§ 609.53, subd. 1 (2002); 609.52, subd. 3(1) (2002). The second-degree felony-murder statute, under which Anderson was charged, provides that a person who "causes the death of a human being, without intent to effect the death of any person, while committing or attempting to commit a felony offense other than criminal sexual conduct in the first or second degree with force or violence or a drive-by shooting" may be sentenced to imprisonment for not more than forty years. Minn.Stat. § 609.19, subd. 2(1). This statutory provision does not define what constitutes "a felony offense."

To understand the felony-murder statute, it is helpful to review the historical backdrop surrounding its enactment as well as our case law. To begin, Minnesota's second-degree felony-murder statute codifies the common law felony-murder rule: " 'if one intends to do another felony, and undesignedly kills a man, this is also murder.' " Rudolph J. Gerber, *The Felony Murder Rule: Conundrum Without Principle,* 31 Ariz. St. L.J. 763, 765 (1999) (quoting Sir William Blackstone, *Commentaries on the Laws of England* 947 (George Chase ed., 4th ed. 1938)). Viewed in historical context, the common law felony-murder rule, though stated broadly, was limited in scope and consequence because there were few felonies[4] at common

---

**2.** The dissenting judge explained that "each of these offenses is *malum prohibitum*—a crime because it is prohibited by statute—rather than *malum in se*—an inherently immoral act." *Anderson,* 654 N.W.2d at 373.

**3.** In 1998, Anderson was adjudicated delinquent for the crime of riot in the second degree, a "crime of violence" pursuant to

Minn.Stat. § 624.712, subd. 5 (2002). It is a felony for one who is adjudicated delinquent of a crime of violence to possess a firearm. Minn.Stat. § 624.713, subds. 1(b), 2.

**4.** The felonies that traditionally supported a felony-murder conviction were: "homicide, mayhem, rape, arson, robbery, burglary, lar-

law—all were *mala in se*[5] and most were life-endangering—and because all were punishable by death. James J. Tomkovicz, *The Endurance of the Felony–Murder Rule: A Study of the Forces that Shape Our Criminal Law,* 51· Wash. & Lee L.Rev. 1429, 1445–46 (1994). As a result, application of the felony-murder rule at common law was consistent with the requirement of mens rea because the malice required for murder could be imputed from the wrongful mental attitude for the predicate felony, and "it made little difference whether the felon was hanged for the felony or for the murder." 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 7.5, at 207 n. 4 (1986); *State v. Branson,* 487 N.W.2d 880, 881 (Minn.1992).

More recently, because the number of felonies has increased and many comparatively minor offenses are classified as felonies, malice is imputed from crimes that are much less severe than murder. *Branson,* 487 N.W.2d at 882. For this reason, many courts have judicially limited the application of the doctrine so that not every felony offense serves as a predicate felony for a felony-murder charge. *Id.; see also* 2 LaFave & Scott, Jr., *supra,* § 7.5, at 206–11.

In Minnesota, prior to 1981, predicate felonies for felony murder were those felonies "committed upon or affecting the person whose death was caused." 40 Minn. Stat. Ann. § 609.195 at 333, 1963 advisory committee cmt. (West 2003). This language limited the application of the felony-murder statute so that "a purely property crime would not fall within the clause [as a proper predicate felony]." *Id.* In *State v. Nunn,* we stated that the justification for this limitation was to "isolate for special treatment those felonies that involve some special danger to human life." · 297 N.W.2d 752, 753 (Minn.1980). Accordingly, district courts were to determine whether an offense involved a special danger to human life by examining the offense in the abstract together with the facts of the particular case, including the circumstances in which the felony was committed. *Id.* at 754.

In 1981, the legislature amended Minnesota's felony-murder statute, increasing the severity of the offense from third-degree murder to second-degree murder and deleting the limiting language, "a felony upon or affecting the person whose death was caused." Act of May 19, 1981, ch. 227, §§ 10 and 11, 1981 Minn. Laws 1006, 1010 (amending Minn.Stat. §§ 609.19, 609.195 (1980) and codified at Minn.Stat. § 609.19, subd. 2 (1982)). In *State v. Back,* decided after the 1981 amendment was adopted, we held that even a property offense can be used as an underlying felony *when a special danger to human life is present.* 341 N.W.2d 273, 276–77 (Minn.1983). In essence, in interpreting the 1981 statutory amendment, we concluded that the possible universe of predicate offenses was expanded to include property offenses but that the previous limitation—that "a special danger to human life" be present—was not abandoned.

---

ceny, prison breach, and rescue of a felon." *State v. Aarsvold,* 376 N.W.2d 518, 521 (Minn. App.1985).

**5.** *Malum in se* means "a wrong in itself[.] * * * An act is said to be *malum in se* when it is inherently and essentially evil, that is, immoral in its nature and injurious in its consequences, without any regard to the fact of its being noticed or punished by the law of the state." *Black's Law Dictionary* 959 (6th ed. 1990). In comparison, *malum prohibitum* means "a thing which is wrong *because* [it is] prohibited; an act which is not inherently immoral, but becomes so because its commission is expressly forbidden by positive law." *Id.* at 960.

In recent years, Minnesota courts have continued to consider both the elements of the predicate felony in the abstract and the totality of the circumstances in determining whether the predicate felony involves a special danger to human life. *See State v. Cole,* 542 N.W.2d 43, 53 (Minn. 1996) ("When determining if the underlying felony involves a special danger to life, we not only consider the elements of the underlying felony in the abstract, but also the facts of the particular case and the circumstances under which the felony was committed."). In *Cole,* we concluded a special danger to human life existed where the defendant, armed with a loaded gun, entered a department store to exchange stolen goods for cash. *Id.* at 46, 53. To avoid arrest for the felony theft charge, the defendant shot and killed a police officer. *Id.* at 47. We determined that both the property crime of theft and the second-degree assault were proper predicate offenses because "the circumstances of this case clearly demonstrate that special danger existed." *Id.* at 53. Furthermore, we noted that the assault itself was a proper predicate felony to a felony-murder conviction because assault is not a property crime but a crime against the person. *Id.*

In the instant case, the state argues that Anderson's felon-in-possession and possession of a stolen firearm offenses support a charge of felony murder. In support of its position, the state first contends that under the plain meaning of the second-degree felony-murder statute, any felony, except those expressly excluded by the statute, can serve as a predicate felony.

The plain language of the second-degree felony-murder statute punishes perpetrators of all unintentional deaths caused during the commission of "a felony," with the exception of crimes that are predicates for first-degree murder:

Whoever does * * * the following is guilty of unintentional murder in the second degree and may be sentenced to imprisonment for not more than 40 years:

(1) causes the death of a human being, without intent to effect the death of any person, while committing or attempting to commit a felony offense other than criminal sexual conduct in the first or second degree with force or violence or a drive-by shooting * * *.

Minn.Stat. § 609.19, subd. 2(1). Admittedly, under its plain language, except for the three specified exceptions, the statute appears to apply to all other felonies. *In re Welfare of M.D.S.,* 345 N.W.2d 723, 729 (Minn.1984).

However, this interpretation ignores the history of our court's judicial limitation of the felony-murder rule as set forth in precedent. We have recognized that when the legislature does not amend our construction of a statute, the court's construction stands. *Western Union Telegraph Co. v. Spaeth,* 232 Minn. 128, 131–32, 44 N.W.2d 440, 441–42 (Minn.1950) ("The 'judicial construction of a statute, so long as it is unreversed, is as much a part thereof as if it had been written into it originally' " and quoting 6 Dunnell, Dig. & Supp. § 8936b); *see also* Minn.Stat. § 645.17 (2002) (providing that "when a court of last resort has construed the language of a law, the legislature in subsequent laws on the same subject matter intends the same construction to be placed upon such language"). Therefore, our post–1981 case law, read in conjunction with the statutory language, is dispositive.

■ In 1980—before the 1981 amendment—we adopted the "special danger to human life" standard which, in Minnesota, requires consideration of the elements of the underlying felony in the abstract *and* the circumstances under which the felony

was committed.[6] *Nunn*, 297 N.W.2d at 753–54. Post-amendment, in 1983 and 1996 respectively, we decided *Back*, 341 N.W.2d 273, and *Cole*, 542 N.W.2d 43. *See also M.D.S.*, 345 N.W.2d at 729–30 (citing, in 1984, *Nunn's* special danger to human life standard). In *Back*, we cited *Nunn's* special danger to human life standard and recognized that if a property offense involved special danger to human life, it could support a felony-murder conviction. *Back*, 341 N.W.2d at 277. Our court advanced *Nunn* again in *Cole* by rejecting Cole's argument that the district court had mistakenly relied upon *Back*. *Cole*, 542 N.W.2d at 52. In concluding that felony theft and second-degree assault were proper predicate felonies for second-degree felony murder, we noted that the special danger standard requires consideration not only of "the elements of the underlying felony in the abstract, but also the facts of the particular case and the circumstances under which the felony was committed." *Id.* at 53. In summary, our post–1981 cases consistently have recognized *Nunn's* special danger to human life two-part standard to limit the application of the felony-murder rule in Minnesota, and the legislature has not legislated otherwise.[7]

■ Applying the statute as previously interpreted by us to this record, we conclude that the predicate offenses of felon in possession of a firearm and possession of a stolen firearm are not inherently dangerous. While the *use* of a firearm can pose significant danger to human life, simple possession—standing alone—does not. In other words, there is nothing about a felon's possession of a firearm, or of a stolen firearm—in the abstract—that in and of itself involves a special danger to human life. As the district court below explained:

> While a felon in possession of a firearm or stolen firearm creates a dangerous situation, there is a material distinction between the level of imminency and probability of the special danger to human life in that situation than in a situation involving the traditional felony predicates. The predicate felony in this case does not require an act of violence in carrying out the crime. Nor can it be persuasively argued that death would be the natural and probable consequence of the Defendant's conduct in carrying out the predicate offense.

Because felon in possession of a firearm and possession of a stolen firearm are not dangerous in the abstract, these predicate felonies fail the special danger to human life standard. Accordingly, we hold that the predicate offenses of felon in possession of a firearm and possession of a stolen firearm cannot support the charge of unintentional second-degree felony murder.[8]

---

**6.** We reject the state's argument that the standard to determine whether an underlying felony can support a charge of second-degree felony murder is a one-part inquiry—whether the offense involves a special danger to human life *as committed*. Minnesota's special danger to human life standard is not merely a totality of the circumstances standard but rather a two-part inquiry into the inherent danger of the offense *and* the danger of the offense as committed. Looking only at the circumstances of a particular case—i.e. the facts—would eviscerate the special danger to human life standard because the predicate offense would always be found to have been committed in a particularly dangerous manner if a death occurs.

**7.** Contrary to the implications set forth in the dissent, we are not writing on a clean slate. We cannot, and should not, ignore our precedent interpreting Minnesota's felony-murder statute in order to render an opinion reaching a different result. While in the future the legislature may choose to amend the statute to clarify or to change the statute's reach, the fact remains that, to date, despite our existing precedent interpreting the statute, it has not.

**8.** Because we reverse on these grounds, we do not reach Anderson's argument that the

Reversed.

GILBERT, Justice (dissenting).

I respectfully dissent from the majority opinion and would affirm the court of appeals. The majority adopts the reasoning of the dissenting judge in the court of appeals panel, which would have affirmed a district court's dismissal of this charge. The district court dismissed this charge in part because, in its reasoning, "[t]he felony offense of felon in possession is more akin to the criminalization of the status of a person, namely, one who is a felon and who possesses a firearm or stolen firearm. Such felony offense is *malum prohibitum* as opposed to *malum in se*." The majority wisely avoids adopting the status offense rationale of the district court but still appears to be intrigued by the district court's reasoning. Rather than reverting to an exercise in Latin, we should deal with the realities of this situation, including the clear intent of the legislature.

The majority acknowledges that the appellant was a felon in possession of a firearm, in fact a stolen firearm. This firearm happened to be a loaded, shortened 12–gauge shotgun. *See* Minn.Stat. § 609.67, subd. 1(c) (2002). Furthermore, this appellant had already been adjudicated a delinquent of riot in the second degree, which is a crime of violence under Minn. Stat. § 624.712, subd. 5 (2002). It also appears to be undisputed that the appellant pointed the shotgun at the victim, it discharged, and Rogers was shot in the head.

The majority candidly admits that "under its plain language, except for the three specified exceptions, the statute appears to apply to all other felonies." Accordingly, the majority concedes that the felon in possession statute and felon in possession

of stolen goods are predicate acts under Minn.Stat. § 609.19, subd. 2(1) (2002). The majority then holds, "we conclude that the predicate offenses of felon in possession of a firearm and possession of a stolen firearm are not inherently dangerous." I disagree. This case involves exactly the inherently dangerous situation the legislature envisioned.

The appellant had already been adjudicated delinquent of a crime of violence. The majority summarily concludes that "there is nothing about a felon's possession of a firearm, or of a stolen firearm—in the abstract—that in and of itself involves a special danger to human life." First of all, we should not decide this case in the abstract. Second, we must recognize that a felon in possession of a firearm is not one of those "many comparatively minor offenses [that] are classified as felonies" noted by the majority. The legislature has determined that felons and firearms are not a good mix. Likewise, the crime of riot in the second degree is a serious crime of violence, which had been recently committed by appellant. Now, the appellant has not only been adjudicated delinquent, but also acts to possess a stolen gun, which is loaded and had been shortened. Shortly upon entering the house of the victim, this gun, which the appellant was feloniously possessing, was pointed at the victim and used to shoot him in the head. Possession of a loaded gun in these circumstances is indeed the type of felony that is inherently dangerous and represents a special danger to human life. As the majority states, "we noted that the special danger standard requires consideration not only of 'the elements of the underlying felony in the abstract, but also the facts of the particular case and the circumstances under which

court of appeals should be reversed because the required causal relationship between the

predicate offense and the resulting death is lacking.

the felony was committed.' " (quoting *State v. Cole*, 542 N.W.2d 43, 53 (Minn.1996)). While I agree with the majority that we must be careful in the application of the felony murder doctrine so that not every felony offense serves as a predicate felony for a felony-murder charge, the legislature wisely included the felonies in issue here within the felony-murder statute.

The majority casts away the clear legislative directive of this enhanced crime by summarily concluding that the offenses of felon in possession of a firearm and possession of a stolen firearm are not felonies sufficiently dangerous to support a felony-murder conviction. The majority opinion effectively amends the statute and discounts the legislative process's recognition of the obvious inherent danger of convicted felons possessing firearms. This is precisely the especially dangerous situation that the legislature may have anticipated in expanding the felony-murder statute to include all but a few designated felonies under this statute. The dangerous combination of a felon and an illegally possessed gun made it possible for the most serious of felonies to be committed; that of wrongfully taking an individual's life.