STATE of Minnesota, Plaintiff,

v.

**Tasha Daphne MITCHELL, Defendant.**

No. A04–1487.

Court of Appeals of Minnesota.

March 29, 2005.

---

Mike Hatch, Attorney General, St. Paul, MN; and Amy Klobuchar, Hennepin County Attorney, Judith A. Johnston, Senior Assistant County Attorney, Donna J. Wolfson, Assistant County Attorney, Minneapolis, MN, for plaintiff.

Leonard Castro, Hennepin County Public Defender, Barbara S. Isaacman, Melissa A. Haley, Mark Vijay, Assistant Public Defenders, Minneapolis, MN, for defendant.

Considered and decided by
TOUSSAINT, Chief Judge;
HALBROOKS, Judge; and PORITSKY,
Judge.*

## OPINION

TOUSSAINT, Chief Judge.

On a certified question from the district court filed pursuant to Minn. R.Crim. 28.03, the court is asked to resolve this question: May a charge of child neglect or endangerment under Minn.Stat. § 609.378 (2002) serve as the predicate offense for the charge of unintentional second-degree (felony) murder under Minn.Stat. § 609.19, subd. 2(1) (2002)?

## FACTS

On August 12, 2003, emergency responders arrived at defendant Tasha Daphne Mitchell's residence in a Minneapolis women's shelter in response to Mitchell's report that her two-month-old son was not breathing. After a paramedic attempted unsuccessfully to revive him at the residence, the baby was transported to the Hennepin County Medical Center (HCMC) and pronounced dead on arrival. Although the baby had no obvious signs of injury, the attending physician noted he looked malnourished. The medical examiner conducted an autopsy immediately.

The police searched Mitchell's room and discovered a calendar on which Mitchell had made notations. On Thursday, July 24—the day after the baby turned seven weeks old—Mitchell wrote: "Began fast @ 5:00 p.m." Thereafter, each date contains a check mark and a running count of the number of days the fast had continued

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

until day 19 of the fast—August 12—on which Mitchell wrote, "HCMC said [B.M.] dead around or in 12:00 hour." Police also found several baby bottles filled with water, but no baby food.

In January 2004, the medical examiner verbally announced its conclusion that the baby had died of malnourishment. In February, the state charged Mitchell with unintentional second-degree felony murder under Minn.Stat. § 609.19, subd. 2(1) (2002), the underlying predicate offense being child neglect or endangerment under Minn.Stat. § 609.378 (2002).

In April 2004, the medical examiner issued the written autopsy report attributing the baby's death to "malnutrition and neglect." The report stated that the baby weighed less at the time of death than when he was born, and that although there was a small amount of food in his large intestine at the time of death, there was no evidence of food in his stomach or small intestine.

Mitchell moved to challenge probable cause for the felony-murder charge, arguing that neither child neglect nor child endangerment can serve as a predicate felony for felony murder because neither poses a special danger to human life in the abstract, as required by Minnesota law. The district court disagreed as to both neglect and endangerment and denied the motion. The court then stayed its order pending this court's resolution of the certified question.

## ISSUE

May felony child neglect or endangerment properly serve as the predicate offense for the charge of felony murder?

## ANALYSIS

■ The determination of whether a given crime may properly serve as a predicate offense to a felony-murder charge is a question of law, which this court reviews de novo. *State v. Anderson*, 666 N.W.2d 696, 698 (Minn.2003).

■ Minnesota's felony-murder statute, Minn.Stat. § 609.19, subd. 2(1) (2002), provides in relevant part that a person who "causes the death of a human being, without intent to effect the death of any person, while committing or attempting to commit a felony offense," is guilty of unintentional second-degree (felony) murder. The statute codifies the common law felony-murder rule: "if one intends to do another felony, and undesignedly kills a man, this is also murder." *Anderson*, 666 N.W.2d at 698 (quotation omitted). As to the other, or predicate, felonies to which the felony-murder rule may apply, "[i]n Minnesota, prior to 1981, predicate felonies for felony murder were those felonies committed upon or affecting the person whose death was caused." *Id.* at 699 (quotation omitted). "[P]urely property crimes" could therefore not serve as predicate felonies, a category limited to "those felonies that involve some special danger to human life." *Id.* (quotation omitted). "In 1981, the legislature amended Minnesota's felony-murder statute, increasing the severity of the offense from third-degree murder to second-degree murder and deleting the limiting language, 'a felony upon or affecting the person whose death was caused.'" *Id.* (quoting Act of May 19, 1981, ch. 227, §§ 10, 11, 1981 Minn. Laws 1006, 1010).

■ The supreme court subsequently interpreted the 1981 statutory amendment to mean that "the felony-murder rule can be used even when the underlying felony is a property offense if that offense, as committed, involves special danger to human life." *State v. Back*, 341 N.W.2d 273, 277 (Minn.1983). A proper analysis of whether the underlying felony involves a special danger to life must consider both "the

elements of the underlying felony in the abstract [and] the facts of the particular case and the circumstances under which the felony was committed." *State v. Cole*, 542 N.W.2d 43, 53 (Minn.1996); *see also Anderson*, 666 N.W.2d at 701 n. 6 (observing that "Minnesota's special danger to human life standard is not merely a totality of the circumstances standard but rather a two-part inquiry into the inherent danger of the offense and the danger of the offense as committed").

Although the supreme court has never relaxed the two-part inquiry, it has repeatedly noted that crimes against persons—by their very elements—more readily pose a special danger to human life than do property crimes. Thus, in *Cole*, 542 N.W.2d at 53, the court wrote that "assault in the second degree itself forms a proper predicate felony to a felony murder conviction—assault is not a property crime, but a crime against the person." And in *State v. Mitjans*, 408 N.W.2d 824, 833–34 (Minn. 1987), the court suggested that the special-danger standard only arises in the context of property crimes, writing that "[b]y definition, felony murder involves an unintentional killing resulting from the commission of a crime against the person *or* from the commission of some other felony that, as committed, involves some special danger to human life" (Emphasis added); *see also Back*, 341 N.W.2d at 276–77 (observing that "[i]f there is such a thing as a typical felony-murder, it probably is an unintentional killing that occurs in the course of robbery or some other crime *against the person* " (emphasis added)).

■ Here, the state charged Mitchell under Minn.Stat. § 609.378 (2002): Neglect or Endangerment of a Child. Under the statute, a parent is guilty of felony child neglect when she "willfully deprives a child of necessary food, clothing, shelter, health care, or supervision appropriate to the child's age, when [she] is reasonably able to make the necessary provisions and the deprivation ... results in substantial harm to the child's physical, mental, or emotional health." *Id.*, subd. 1(a)(1). A parent is guilty of child endangerment when she "intentionally or recklessly caus[es] or permit[s] a child to be placed in a situation likely to substantially harm the child's physical, mental, or emotional health or cause the child's death." *Id.*, subd. 1(b)(1).

Whether child neglect or endangerment may serve as a predicate to felony murder is a matter of first impression in Minnesota. Mitchell does not argue that the facts of this particular case and the circumstances under which the felony was committed did not involve a special danger to human life; they demonstrably did.

As to child neglect, the district court observed that

> the felony of Child Neglect addresses a child's most basic needs in order to survive. It can hardly be argued that [any] child, no matter what the age, could survive without the items listed in the statute. One need not be a medical professional to know that deprivation of food or shelter would quickly place a child in physical peril.... In light of the vulnerability of children, the risk posed to them when deprived of nutrition is particularly special because they cannot take up their own cause and seek the care they need.

We agree with this analysis.

Mitchell argues that "the offense [of child neglect] is not inherently dangerous in the abstract [because the statute] does not include reference to death as a possible consequence of parental neglect [and] does not even reference great bodily harm [defined by Minn.Stat. § 609.02, subd. 8 (2002) as creating a 'high probability of

death'] as a possible consequence of parental neglect." But the supreme court has repeatedly held that offenses, such as burglary or theft, that lack any statutory elements referencing bodily harm—let alone great bodily harm or a high probability of death—may properly serve as predicate offenses for felony murder. *See, e.g., Cole,* 542 N.W.2d at 52–53 (holding second-degree felony theft (shoplifting), when the commission of the crime involves special danger to human life, is a proper predicate felony for conviction of second-degree felony-murder). As the supreme court has noted, to require that predicate felonies pose a special danger to human life under the circumstances of every conceivable case would "eviscerate the special danger to human life standard." *Anderson,* 666 N.W.2d at 701 n. 6.

In a related argument, Mitchell asserts that because an individual could violate the child-neglect statute in ways that do not create a special danger to human life, the statute can never serve as a predicate to felony murder. In support, she relies upon *People v. Caffero,* 255 Cal.Rptr. 22, 207 Cal.App.3d 678, 682 (1989), and a Minnesota district court case, *State v. Williams,* No. 02072878, slip. op. at 31–32 (Minn.Dist.Ct. Apr. 5, 2004). But Mitchell cites no controlling authority holding that an offense may only serve as a predicate felony where every imaginable scenario arising under that offense poses a special danger to human life. And the effect of adopting such a requirement would be to frustrate the very purpose of the felony-murder rule.

Mitchell contends that the "substantial harm" referenced in the child-neglect statute does not constitute a special danger to human life, arguing: "If injuries result from parental neglect, those injuries are most likely to be bruising or broken bones. The resulting injuries, if any, are tempo-

rary, not life threatening or even permanent." We are not convinced by Mitchell's speculative attempt to minimize the longevity or seriousness of broken bones or bruising inflicted upon a child by parental neglect. And she cites no authority for the proposition that a predicate offense to felony murder must contain an element specifically referencing permanent or life-threatening injuries.

Mitchell next argues that child neglect and endangerment cannot serve as predicate felonies because they are designated as Severity Level I offenses under the Minnesota Sentencing Guidelines. Mitchell contends that offense severity level is a predictor of predicate-offense suitability. But we cannot discern—and Mitchell does not indicate—any correlation between the severity levels assigned to offenses in the guidelines and those offenses' capacity to act as predicates to felony murder. For instance, neither price-fixing nor bringing stolen goods into the State—both Level VI offenses—appears to be a more inherently suitable predicate offense than felony child neglect and endangerment.

Finally, Mitchell argues that the circumstances of this case support a charge of second-degree manslaughter, a violation of Minn.Stat. § 609.205, subd. 5 (2002). Because Mitchell did not raise this issue before the district court, and because it is beyond the scope of the question certified by that court, we decline to address it here.

We conclude that child neglect does pose a special danger to human life in the abstract, and that the child-neglect charge against Mitchell may properly serve as a predicate to a felony-murder charge. We also conclude that child endangerment, whose elements specifically include the possibility of the endangered child's death, may serve as a predicate to a felony-murder charge.

## DECISION

A charge of child neglect or endangerment under Minn.Stat. § 609.378 (2002) may serve as the predicate offense for the charge of felony murder under Minn.Stat. § 609.19, subd. 2(1) (2002). We answer the certified question in the affirmative.