# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-40700

United States Court of Appeals
Fifth Circuit

**FILED**
August 21, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

JUAN CARLOS HERRERA-SERRANO,

      Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:15-CR-1205-1

Before STEWART, Chief Judge, and JONES and CLEMENT, Circuit Judges.

PER CURIAM:*

Appellant Juan Carlos Herrera-Serrano pled guilty to illegal reentry after deportation following an aggravated felony conviction. The district court increased Herrera-Serrano's offense level by 16 levels because he was deported following a conviction for a crime of violence, namely his state-court conviction for murder without intent while committing a felony. The district court overruled Herrera-Serrano's objection to the enhancement and sentenced him to 46 months of imprisonment and three years of supervised release. Because

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-40700

his state murder conviction qualifies as an offense characterized by the use, attempted use, or threatened use of physical force, the district court correctly applied U.S.S.G. § 2L1.2 and its sentencing judgment is AFFIRMED.

## BACKGROUND

Herrera-Serrano pled guilty without the benefit of a plea agreement to illegal reentry after deportation following an aggravated felony conviction, in violation of 8 U.S.C. § 1326(a) and (b)(2). Herrera-Serrano had a prior Minnesota conviction for unintentional murder while committing a felony. At rearraignment, Herrera-Serrano admitted that he was convicted of murder in 2007, deported in 2014, and found unlawfully present in the United States in 2015. The presentence report ("PSR") applied a 16-level crime of violence enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii). Based on his total offense level of 21 and his criminal history category of III, the PSR calculated an advisory guidelines range of 46 to 57 months of imprisonment.

Herrera-Serrano objected and the district court overruled his objection to the 16-level crime of violence enhancement for his prior murder conviction. After adopting the PSR's factual findings and Guideline calculations, the district court sentenced Herrera-Serrano to 46 months of imprisonment and three years of supervised release. Herrera-Serrano timely appealed.

## DISCUSSION

On appeal, Herrera-Serrano contends that the district court reversibly erred in applying the 16-level crime of violence enhancement pursuant to U.S.S.G § 2L1.2(b)(1)(A)(ii) based on his prior unintentional murder conviction. Herrera-Serrano argues that his prior conviction under Minn. Stat. § 609.19.2(1) does not have as an element the use, attempted use, or threatened use of physical force against the person of another. Herrera-Serrano further asserts that his Minnesota unintentional murder offense is not generic murder and thus is not an enumerated crime of violence under § 2L1.2.

2

No. 16-40700

This court reviews the district court's sentencing decision for reasonableness. *United States v. Anderson*, 559 F.3d 348, 354 (5th Cir. 2009). Whether a prior offense qualifies as a crime of violence under the Guidelines is reviewed *de novo*. *United States v. Rodriguez*, 711 F.3d 541, 548 (5th Cir. 2013) (en banc). "We may affirm an enhancement on any ground supported by the record." *United States v. Garcia-Gonzalez*, 714 F.3d 306, 314 (5th Cir. 2013).

Under the 2015 edition of the Sentencing Guidelines, a defendant convicted of illegal reentry receives a 16-level enhancement if he was previously deported after a felony conviction for a crime of violence for which he was assessed criminal history points. § 2L1.2(b)(1)(A)(ii).  Crime of violence is defined in pertinent part as "any of the following offenses under federal, state, or local law: murder, manslaughter, . . . aggravated assault, . . . or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." § 2L1.2, cmt n.1(B)(iii).  A crime of violence under § 2L1.2 can be found in one of the enumerated offenses or by referencing that the offense of conviction "has as an element the use, attempted use, or threatened use of physical force against the person of another." *United States v. Herrera-Alvarez*, 753 F.3d 132, 137 (5th Cir. 2014).

Further, if the underlying statute of conviction is "divisible," the federal court may consider whether the alternative crimes described in the statute are separately crimes of violence.  The methodology for this inquiry was explained by the Supreme Court in *Mathis v. United States,* 136 S. Ct. 2243, 2248–49 (2016), where the Court distinguished between "various means of committing the offense," which evidence a "non-divisible" statute, and "alternative elements of each offense" embodied by the statute, which is a "divisible" statute

3

because "a jury must agree" on the elements. *United States v. Howell,* 838 F.3d 489, 497 (5th Cir. 2016).

If a statute is divisible, though it does not on its face qualify as a crime of violence pursuant to § 2L1.2, federal courts may employ a modified categorical approach and rely on a limited class of documents from the underlying conviction to determine which alternative elements formed the conviction's basis. *Shepard v. United States,* 544 U.S. 13, 16, 20–21 (2005).

Here, the Minnesota statute provides that a person is guilty of unintentional murder in the second degree if he or she:

> (1) causes the death of a human being, without intent to effect the
> death of any person, while committing or attempting to commit
> a felony offense other than criminal sexual conduct in the first
> or second degree with force or violence or a drive-by shooting.

Minn. Stat. § 609.19.2(1). Because this statute does not "define what constitutes 'a felony offense,'" *State v. Anderson,* 666 N.W.2d 696, 698 (Minn. 2003), we consult "authoritative sources of state law," *Mathis,* 136 S. Ct. at 2256, and learn that Minnesota limits the application of § 609.19.2(1) to killings resulting from felonies that involve a "special danger to human life." *State v. Smoot,* 737 N.W.2d 849, 851–52 (Minn. Ct. App. 2007); *Anderson,* 666 N.W.2d at 700–01. More importantly, Minnesota requires the jury to be instructed as to the elements of the underlying felony. "While the state is not required to prove that the defendant intended to effect the death of the victim, it must prove that the defendant committed the predicate felony." *State v. Charles,* 634 N.W.2d 425, 430 (Minn. Ct. App. 2001) (citing *State v. Cole,* 542 N.W.2d 43, 51 (Minn. 1996)). Consequently, the statute is divisible because the underlying felony offense and its elements must be proven to the jury.

4

No. 16-40700

Herrera-Serrano's principal objection to the statute's divisibility lies in citing two cases in which he claims two predicate offenses were referenced in a single § 609.19.2(1) count. *Anderson,* 666 N.W.2d at 697; *Cole,* 542 N.W.2d at 52. In *Anderson*, however, the only issue before the court was dismissal of an indictment, and in *Cole* there is likewise no information about how the offense was charged or whether jury unanimity was required for proof of the underlying felony offenses. Neither case overrides our divisibility conclusion.

Herrera-Serrano was charged with, and pled guilty to: "unlawfully, wrongfully caus[ing] the death of a human being, [the victim], without intent to effect the death of any person, while committing or attempting a felony offense, assault in the first degree."

From this charge, it is a short step to decide that the offense of conviction has as an element the use of physical force against the person of the victim. § 2L1.2, cmt n.1(B)(iii). The crime of first degree assault in Minnesota is based on an assault that "inflicts great bodily harm." Minn. Stat. § 609.221, subd.1. An assault is defined, in pertinent part, as "the intentional infliction of or attempt to inflict bodily harm upon another." Minn. Stat. § 609.02, subd. 10. "Great bodily harm" is just that: *inter alia*, bodily injury that creates a high probability of death, or causes serious permanent disfigurement. Minn. Stat. § 609.02, subd. 8. And the Minnesota statutes clearly require the harm to be inflicted with purpose, knowledge, or belief that the result specified will occur. Minn. Stat. § 609.02, subd. 9(3), (4). It is no surprise then that our sister circuit has held that Minnesota assault of the third-degree, Minn. Stat. § 609.223 subd. 1, has as an element the use of force. *Roberts v. Holder*, 745 F.3d 928, 931 (8th Cir. 2014). Similarly, this court recently held that intentional, knowing, or reckless causing of bodily injury to another (the Texas offense of domestic abuse by impeding breathing or circulation) has as an element the use of force. *Howell*, 838 F.3d at 501–03; *See also United States v. Castleman*,

No. 16-40700

134 S. Ct. 1405, 1414 (2014) ("'physical force' is simply 'force exerted by and through concrete bodies.'"). We therefore conclude that the Minnesota offense of conviction has as an element the use of physical force.

For all these reasons, Herrera-Serrano's base offense level was properly enhanced because of his prior crime of violence, and we need not discuss the government's alternative theories for upholding the sentence. **AFFIRMED**.