*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BIRGIT DECLERCK,

        Plaintiff-Appellant,

v

PIERRE DESMET,

        Defendant-Appellee.

UNPUBLISHED
April 21, 2025
11:03 AM

No. 368730
Oakland Circuit Court
LC No. 2019-871667-DO

Before: BORRELLO, P.J., and RIORDAN and PATEL, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order confirming an arbitration award entered in postjudgment divorce proceedings. We affirm.

## I. BACKGROUND

The parties were married for over 30 years. During their marriage, the parties jointly operated a business, Dynalog, Inc., which defendant owned and plaintiff managed. The parties briefly separated in 2019. An argument between the parties resulted in a misdemeanor domestic-violence charge, MCL 750.81(2), against defendant. Defendant ultimately entered a no-contest plea to disturbing the peace, MCL 750.170. Plaintiff commenced this divorce action immediately after the incident that led to the criminal charge against defendant.

Following extensive mediation in which both parties were represented by counsel, the parties executed a divorce settlement agreement (DSA) in November 2019. The DSA requires defendant to pay plaintiff monthly spousal support until January 1, 2030. Defendant was to pay plaintiff nonmodifiable spousal support of $7,000 per month between January 1, 2020, and June 1, 2021. Thereafter, defendant's monthly spousal-support obligation is subject to an annual calculation based on his prior-year income. By June 1st of each year, the parties are required to provide proof of their prior-year income. In addition, defendant must allow plaintiff quarterly access to his Quickbooks datafile documenting Dynalog's expenses. The DSA requires the parties to resolve any disputes regarding any aspect of the spousal-support provisions by arbitration. The DSA further provides that plaintiff had "the right to request the arbitrator to exclude" any objectionable business expenses included in calculating defendant's income.

-1-

Under the parties' property settlement, plaintiff received the marital home and defendant was awarded his ownership interest in Dynalog. The property settlement contemplated deferred payments and credits between the parties, and is also subject to adjustments over time based on fluctuations in defendant's net business income. Beginning on June 30, 2020, and continuing each year for eight years, 15% of defendant's net business income is to be deducted from plaintiff's obligation to pay defendant for his equity in the home. If the parties do not agree upon any aspect of defendant's business interests, the DSA directs that those disputes are to be resolved through arbitration.

The DSA contains an arbitration clause wherein the parties acknowledged their agreement to arbitrate disputed issues pursuant to MCL 600.5070 *et seq*. The DSA also includes the disclosures stated in MCL 600.5072, including:

1) Arbitration is voluntary.

2) Arbitration is binding and the right of appeal is limited.

3) Arbitration is not recommended for cases involving domestic violence.

4) Arbitration may not be appropriate in all cases. . . .

Each party signed the DSA attesting that they had executed it "in full and final settlement of the pending divorce case, freely and voluntarily, without duress, and as their own free act and deed."

In December 2019, the parties participated in a pro confesso hearing where plaintiff acknowledged that she signed the DSA and understood its terms. In January 2020, the trial court entered a consent judgment of divorce (JOD), which both parties signed. The DSA was incorporated and merged into the JOD by reference. The JOD included an acknowledgment by each party that it was entered "with advice of legal counsel" and on "his or her own volition."

One day before the JOD was entered, the parties executed a domestic-relations arbitration agreement (2020 arbitration agreement), which authorized the arbitrator to decide some outstanding issues.[1] The 2020 arbitration agreement included a domestic-violence acknowledgment and waiver, stating that each party read the disclosures included within the agreement, and agreed that, although there had been previous allegations of domestic abuse,[2] each party was in a separate room for the arbitration proceedings, and that neither felt threatened by the other and was able to present evidence and make decisions without threat or intimidation. Like the DSA, the 2020 agreement included the disclosures set forth in MCL 600.5072, including that arbitration was voluntary and was not recommended for cases involving domestic violence. The

---

[1] The remaining issues were Dynalog payments, security for support obligations, status-quo expenses and violations, account divisions, safes and safe deposit boxes, impending expenses and taxes, household furnishings, and execution of documents.

[2] Defendant has never admitted that any domestic violence occurred and continues to contest plaintiff's characterization of events that took place in 2019 before plaintiff filed her complaint for divorce.

parties participated in the 2020 arbitration with each party represented by counsel. The record reflects that the 2020 proceedings were held in a caucus format in which each party met with the arbitrator on separate dates.

Two years later, plaintiff contacted the arbitrator to dispute the recalculation of 2022 spousal support and defendant's net business income. In November 2022, the arbitrator held a prehearing conference under MCL 600.5076, by videoconferencing technology with both parties in the same virtual meeting room, and then proceeded with the formal arbitration on the same day. Plaintiff was not represented by counsel during the proceedings. The parties tell conflicting stories about the format in which the arbitration took place. Defendant maintains that the arbitrator placed the parties in breakout rooms throughout the proceedings, just as he had during the 2020 proceedings. Plaintiff asserts that the parties were not placed in separate rooms. Both parties and defendant's accountant testified during the proceedings, and the parties presented written submissions addressing the disputed issues.

On November 17, 2022, the arbitrator issued an opinion and order awarding plaintiff $7,964 in monthly spousal support. The arbitrator addressed several issues regarding the calculation of defendant's personal income and his net business income, but this appeal challenges only two of those issues: (1) the treatment of a vehicle purchased by Dynalog in calculating defendant's 2021 income and his net business income, and (2) the effective tax rate applied to defendant's net income in calculating the offset from plaintiff's obligation to pay defendant for his equity in the home. Because Dynalog bought, rather than leased, the subject vehicle, the arbitrator excluded the vehicle in calculating defendant's 2021 income and his net business income. The arbitrator further concluded that all investment income and taxes on it should be excluded when calculating defendant's effective tax rate.

Both parties presented errors and omissions submissions to the arbitrator regarding the 2022 calculations. In January 2023, the arbitrator issued an opinion addressing those submissions. Relevant to this appeal, the arbitrator rejected plaintiff's arguments regarding the value of defendant's effective tax rate and the value of his car expenditures. However, the arbitrator adjusted the calculation of monthly spousal support based on the formula in the DSA, which resulted in a monthly spousal-support obligation of $8,322. Two months later, plaintiff submitted a request for reconsideration or clarification of the arbitrator's order. The arbitrator issued a clarified opinion, but the monthly support obligation was unchanged.

Thereafter, plaintiff retained counsel and moved to vacate, modify and/or correct the arbitration award. Plaintiff argued that the arbitrator exceeded the scope of his authority and made legal, procedural, and mathematical errors. Plaintiff challenged the arbitrator's exclusion of the purchase cost of the Dynalog vehicle from defendant's income and calculation of defendant's effective tax rate. Plaintiff further alleged a long history of domestic violence and argued that the arbitrator failed to implement measures necessary to protect plaintiff during the arbitration process so that she could vigorously further her interests. Defendant denied any history of domestic violence. Defendant also asserted that the arbitrator properly applied the language of the DSA in excluding the capital expenditure on the subject vehicle, and in clarifying the term "effective tax rate" to exclude taxes paid on defendant's investment income from the calculation of defendant's net business income.

-3-

Following a hearing, the trial court denied the motion. Citing the domestic-violence acknowledgment and waiver signed by both parties in 2020, along with plaintiff's delay in seeking to vacate the arbitration award after fully participating in the arbitration process, the court declined to vacate the arbitration award. The court also rejected plaintiff's claims of error. First, the court held, "The fact that the company's purchase of a new vehicle was categorized as a capital expenses and is not an error of law discernable on the face of the award itself." The court further concluded that "effective tax rate" was not defined in the agreement, and held that the arbitrator's decision to exclude defendant's investment income from calculation of the effective tax rate was also not an error of law discernable on the face of the award.

Plaintiff moved for reconsideration, which the trial court denied. Thereafter, the trial court entered an order confirming the arbitration award. This appeal followed.

III. DISCUSSION

Plaintiff argues that the trial court erred by denying her motion to vacate the arbitration award because she was not represented by counsel during the arbitration process and the arbitrator failed to implement appropriate safeguards and protections in light of the history of domestic violence. Plaintiff further asserts that the court erred by failing to vacate or correct the substantive errors in the award related to the vehicle expense and defendant's effective tax rate. We disagree.

A. STANDARDS OF REVIEW

Whether this Court has jurisdiction over an appeal is an issue that we determine de novo. *Wardell v Hincka*, 297 Mich App 127, 131; 822 NW2d 278 (2012). We also review de novo issues of statutory interpretation and the alleged overreach of an arbitrator in his or her lawful authority. See *Miller v Miller*, 474 Mich 27, 30; 707 NW2d 341 (2005). Likewise, a trial court's decision to enforce, vacate or modify an arbitration award is reviewed de novo. *Cipriano v Cipriano*, 289 Mich App 361, 368; 808 NW2d 230 (2010). The interpretation of a contract is a question of law that we also review de novo. *Reed v Reed*, 265 Mich App 131, 141; 693 NW2d 895 (2005)

B. JURISDICTIONAL CHALLENGE

As an initial matter, defendant challenges this Court's jurisdiction, arguing that the order confirming the arbitration award was not appealable by right. We disagree.

This Court has jurisdiction over an appeal of right from an order of a court "from which appeal of right to the Court of Appeals has been established by law or court rule." MCR 7.203(A)(2). Arbitration in domestic-relations matters is governed by the domestic-relations arbitration act, MCL 600.5070 *et seq*. (DRAA), the Uniform Arbitration Act, MCL 691.1681 *et seq*. (UAA), and MCR 3.602. MCL 600.5070(1); MCL 691.1683. The DRAA states, "An appeal from an arbitration award . . . that the circuit court confirms, vacates, modifies, or corrects shall be taken in the same manner as from an order or judgment in other civil actions." MCL 600.5082. Similarly, MCR 3.602(N) provides "[a]ppeals may be taken as from orders or judgments in other civil actions." Additionally, the UAA states that "[a]n appeal may be taken from . . . [a]n order confirming or denying confirmation of an award." MCL 691.1708(1)(c).

When a case presents a question of statutory interpretation, our goal is to ascertain and give effect to the Legislature's intent as determined by the statutory language. See *Miller*, 474 Mich at 30. "Courts must interpret statutes in a way that gives effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory. A statute is rendered nugatory when an interpretation fails to give it meaning or effect." *Esurance Prop& Cas Ins Co*, 507 Mich 498, 508-509; 968 NW2d 482 (2021) (cleaned up). Although MCL 691.1708 does not specify that an appeal of an order listed in MCL 691.1708(1) is by right, to conclude otherwise would essentially render MCL 691.1708(1) nugatory. A circuit court judgment or order that is not a final judgment appealable by right is appealable by leave. MCR 7.203(B)(1). Thus, for MCL 691.1708(1) to have any meaning, it must authorize an appeal that would otherwise not exist—an appeal of right—for the orders listed. The trial court's October 2023 order is appealable by right under MCL 691.1708(1)(c) because it confirmed the May 2023 arbitration award.

In addition, MCL 600.5082 and MCR 3.602(N) both authorize appeals from orders in arbitration mattes as may be taken in other civil actions. Accordingly, we may exercise jurisdiction over the appeal in this case.

For these reasons, we reject defendant's jurisdictional challenge.

## C. WAIVER OF OBJECTIONS TO ARBITRATION

Plaintiff argues that the trial court should have vacated the arbitration award because she was not represented by counsel and the arbitrator failed to implement safeguards and protections in light of the history of domestic violence. We disagree.

The purpose of arbitration is to avoid protracted litigation. *Cipriano*, 289 Mich App at 367. The DRAA requires that before an arbitration proceeding commences, there must be a written agreement that sets out the subjects of the arbitration and the arbitrator's powers. *Miller*, 474 Mich at 34, citing MCL 600.5071 and MCL 600.5072(1)(e). A court may not order a party in a domestic-relations matter to participate in arbitration unless each party acknowledges, on the record or in writing, that he or she has been informed that "[a]rbitration is not recommended for cases involving domestic violence." MCL 600.5072(1)(c).

MCL 600.5072 provides additional requirements for arbitration in cases involving allegations of domestic violence:

> (2) If . . . , in the pending domestic relations matter, there are allegations of domestic violence . . . , the court shall not refer the case to arbitration unless each party to the domestic relations matter waives this exclusion. *A party cannot waive this exclusion from arbitration unless the party is represented by an attorney throughout the action, including the arbitration process, and the party is informed on the record concerning all of the following*:

> (a) The arbitration process.

> (b) The suspension of the formal rules of evidence.

-5-

(c) The binding nature of arbitration.

(3) If, after receiving the information required under subsection (2), a party decides to waive the domestic violence exclusion from arbitration, the court and the party's attorney shall ensure that the party's waiver is informed and voluntary. If the court finds a party's waiver is informed and voluntary, the court shall place those findings and the waiver on the record. [Emphasis added.]

Waiver is the intentional relinquishment or abandonment of a known right. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). A party who waives his or her rights under a rule may not then seek appellate review of a claimed deprivation of those rights. *Id*. Simply stated, the waiver extinguishes any error. *Id*.

Judicial review of an arbitration award is very limited. *Miller*, 474 Mich at 32. A trial court must enforce an arbitration award properly rendered under the DRAA. MCL 600.5079(1). But a court may only vacate a domestic relations arbitration award in limited circumstances:

(a) The award was procured by corruption, fraud, or other undue means.

(b) There was evident partiality by an arbitrator appointed as a neutral, corruption of an arbitrator, or misconduct prejudicing a party's rights.

(c) The arbitrator exceeded his or her powers.

(d) The arbitrator refused to postpone the hearing on a showing of sufficient cause, refused to hear evidence material to the controversy, or otherwise conducted the hearing to prejudice substantially a party's rights. [MCL 600.5081(2).]

Plaintiff argues that the arbitrator exceeded his powers. "[A] party seeking to prove that a domestic relations arbitrator exceeded his or her authority must show that the arbitrator either (1) acted beyond the material terms of the arbitration agreement or (2) acted contrary to controlling law." *Washington v Washington*, 283 Mich App 667, 672; 770 NW2d 908 (2009). When determining whether an arbitrator has exceeded his or her powers, a court may not review the arbitrator's findings of fact, evaluate the arbitrator's mental processes, or substitute its judgment for that of the arbitrator. *Id*. at 672, 675. Any error of law must be discernable on the face of the award itself and "must be so substantial that, but for the error, the award would have been substantially different." *Id*. at 672 (cleaned up).

In this case, by signing the DSA, plaintiff acknowledged that she read and understood the required disclosures under MCL 600.5072(1) and (2), and was voluntarily waiving the domestic-violence exclusion under MCL 600.5072(2). The DSA requires the parties to resolve any disputes regarding any aspect of the spousal-support provisions by arbitration, and if the parties do not agree upon any aspect of defendant's business interests, the DSA directs that those disputes are also to be resolved through arbitration. Plaintiff acknowledged at the pro confesso hearing that she signed the DSA and understood its terms. The DSA was incorporated and merged into the JOD. Further, plaintiff signed the JOD, which affirmed that the DSA was equitable and would be binding on both parties. The JOD also included an acknowledgment that it was entered "with

advice of legal counsel" and on "his or her own volition." Additionally, plaintiff signed the 2020 arbitration agreement, which included a domestic-violence acknowledgment and waiver and gave the arbitrator the power to decide an array of issues related to the divorce proceedings. The record clearly demonstrates that plaintiff waived objections to arbitration based on domestic violence.

The JOD constituted a final judgment disposing of all the claims, including plaintiff's pre-arbitration domestic-violence allegation. MCR 7.202(7)(a)(i). Neither party was subject to a personal protection order and there were no new allegations of domestic violence in plaintiff's written submissions of disputed issues, written submissions to correct errors and omissions, or her written submission for reconsideration or clarification of the January 2023 award. See MCL 600.5072(2).

Plaintiff initiated the arbitration process to dispute the spousal support and property offset calculations, and she actively participated unrepresented by counsel. She retained counsel and sought to vacate the arbitration proceeding on the basis of domestic violence only *after* the clarified final opinion was entered. Accordingly, we conclude that the trial court properly denied plaintiff's motion to vacate the arbitration award on the basis of domestic violence. See *Valentine v Valentine*, 277 Mich App 37, 38-40; 742 NW2d 627 (2007).

We also find no merit in plaintiff's argument that the arbitrator exceeded his authority because he failed to conduct the arbitration in a caucus-like format in which the parties were to remain in separate rooms. Although the 2020 arbitration agreement stated that "each party is in a separate room for these proceedings, and each party therefore does not feel threatened or intimidated by the other or by these proceedings," it also stated, "The parties specifically agree that [the Arbitrator] may hear testimony in separate rooms." This clear and unambiguous language leaves the issue of caucus-like arbitration proceedings to the arbitrator's discretion. "[C]ourts must . . . give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003) (cleaned up). There is no evidence on the face of the award that the arbitrator violated the terms of the arbitration agreement, or that, but for any such alleged error, the award would have been substantially different. See *Washington*, 283 Mich App at 672. Moreover, plaintiff fully and actively participated in the arbitration proceedings without raising any objections to the format of the proceedings, which constitutes a waiver. See *Marshall Lasser, PC v George*, 252 Mich App 104, 109; 651 NW2d 158 (2002) (holding that by failing to object to the procedure utilized during the proceedings the plaintiff waived the right to challenge the issue).

## D. AUTOMOBILE EXPENSE

Plaintiff further argues that the trial court erred by confirming the arbitrator's award because the arbitrator disregarded clear language in the DSA limiting the automobile expense that defendant could properly deduct when determining his business and personal income for purposes of determining spousal support. We disagree.

The DSA stated that, from July 1, 2021, to January 1, 2030, defendant's monthly spousal-support payments to plaintiff would be recalculated annually on the basis of defendant's income from the previous calendar year, and that defendant's income would be calculated by adding,

among other things, Dynalog's pre-tax income, defendant's salary, contributions to defendant's retirement, and a portion of defendant's auto expenses Dynalog paid based on 6,000 miles attributed to business purposes. However, 100% of business-related capital expenditures was to be subtracted from defendant's income total.

In 2021, Dynalog purchased a vehicle that it listed as a capital expenditure on its 2021 tax returns and claimed over $67,000 in vehicle-related expenses. The arbitrator found that the new car's expenses, and the allocation of those expenses on Dynalog's 2021 tax returns, appeared consistent with past practices, specifically noting that Dynalog had in the past provided a vehicle for defendant, and opining that nothing prohibited Dynalog from treating the vehicle as a capital expenditure for tax purposes. Because Dynalog purchased the vehicle, the arbitrator concluded that the car's value was a capital expenditure that was properly excluded from the calculation of defendant's personal and net business income, particularly given that the portion attributed to defendant's personal use was captured in his income as part of his compensation.

The arbitrator subsequently concluded that the purchased vehicle was a capital expenditure subject to depreciation, meaning that the net income and net business income calculations would capture the vehicle's value in later years in the depreciation-expenses portion of the calculations for defendant's personal and net business income. The DSA stated that 100% of depreciation expenses were to be added, rather than subtracted, to the amount used to calculate defendant's income. The arbitrator accordingly opined that it would be unfair for plaintiff to reap the benefit of increased spousal support from the inclusion of the vehicle's full purchase price and to benefit again in later years when the vehicle's depreciation was included in defendant's income calculations. In other words, defendant's vehicle expenses should not be reflected in plaintiff's income twice.

The trial court concluded that the arbitrator's categorization of the vehicle's purchase as a capital expenditure rather than a vehicle expense was not an error of law discernable on the face of the award. We agree. Plaintiff essentially challenges the arbitrator's findings of fact and its interpretation of the DSA. As stated, our review of an arbitration award is very limited. *Miller*, 474 Mich at 32. We cannot disturb the arbitrator's factual findings. *Washington*, 283 Mich App at 672. And we "may not engage in contract interpretation, which is a question for the arbitrator." *Konal v Forlini*, 235 Mich App 69, 74; 596 NW2d 630 (1999). There is no basis on the face of the award for this Court to conclude that the arbitrator erred in its interpretation of the terms "Auto Expenses" and "vehicle expenses", or in allowing defendant to count the expenses associated with the purchase of the new vehicle as business-related capital expenditures.

E. EFFECTIVE TAX RATE

Plaintiff also argues that the trial court erred by affirming the arbitration award because the arbitrator miscalculated defendant's effective tax rate for purposes of determining his income. We disagree.

The DSA stated that, although defendant would retain his ownership of Dynalog, he would owe plaintiff 15% of his net business income for 8 years, with the first amount to be calculated as of June 30, 2020. The DSA further provided a detailed formula for how defendant's net business income was to be calculated. The arbitrator concluded that all investment income and attendant

taxes should be excluded when calculating defendant's effective federal and state tax rate. Plaintiff challenged the arbitrator's calculation method. She requested that the arbitrator reassess and recalculate defendant's effective tax rate without subtracting investment income from taxable income, while still excluding investment taxes paid from total expenses. The arbitrator declined, explaining that keeping the income in taxable income but excluding investment tax in the "total tax amount" would create a "lopsided effective tax rate value that is not an accurate measure of the effective tax rate of [defendant's] income less his investment income." In response to plaintiff's motion for reconsideration or clarification, the arbitrator stated that investment income was not a component of the spousal-support calculation. Accordingly, both defendant's investment income and the taxes that he paid on investment income were to be excluded from the calculation.

Noting that the term "effective tax rate" as stated in the DSA was not defined in the agreement, the trial court held that the arbitrator's exclusion of defendant's investment income from the effective tax rate calculation was not an error of law discernable on the face of the award. We agree. We must decline plaintiff's invitation to engage in contract interpretation, *Konal*, 235 Mich App at 74, or review the arbitrator's findings of fact or mental processes leading to the award, *Washington*, 283 Mich App at 667, 672. There is no basis on the face of the award for us to conclude that the arbitrator erred in his interpretation of the term "effective tax rate" as used in the DSA or in his calculations defendant's effective tax rate for purposes of determining his income.

Affirmed.


/s/ Stephen L. Borrello
/s/ Michael J. Riordan
/s/ Sima G. Patel

-9-